# BARRETTE v. WHITNEY.

No. 2013. · Decided November 23, 1909 (106 Pac. 522).

1. JUDGMENT—COLLATERAL ATTACK—PROBATE PROCEEDINGS—ORDERS OF COURT SUBSEQUENT TO APPOINTMENT OF EXECUTOR OR ADMINISTRATOR—NOTICE. Under Comp. Laws 1907, sections 3779, 3817, 3818, 4026, 4037, providing that no order affecting realty shall be void for want of notice on it appearing that the executor or administrator was appointed by a court of competent jurisdiction on statutory notice, and providing for notice of the hearing of a petition for letters of administration, etc., probate proceedings are proceedings in rem, and the court acquires jurisdiction of the property of the estate of a decedent and of the persons claiming any interest therein by the statutory notice of· the hearing of the petition for letters; and other notices provided for are not jurisdictional, and a disregard thereof is a mere irregularity, assailable, in the absence of fraud, in a direct proceeding only.[1] (Page 583.)

2. JUDGMENT—COLLATERAL ATTACK—PROBATE PROCEEDINGS—ORDERS SUBSEQUENT TO APPOINTMENT OF EXECUTOR OR ADMINISTRATOR— RIGHT TO FURTHER NOTICE. All parties in interest in probate proceedings who are brought within the jurisdiction of the court by the statutory notice of the hearing of the petition for letters of administration must take notice of the law; and though they may, as a general rule, rely on the presumption that the court will obey the law, they may not remain silent where the court erroneously departs from or disregards any of the provisions of the law, and then collaterally assails the erroneous acts. (Page 587.)

3. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—PROBATE PROCEEDINGS—NOTICE—SUFFICIENCY. It is within the power of the Legislature, within reasonable bounds, to determine what shall constitute sufficient notice to give the court jurisdiction of the estate of a decedent, and what shall be sufficient to apprise those interested therein that the court will administer the estate and distribute the property among the parties in interest; and, where the notice is sufficient to accomplish this purpose, the notice constitutes due process of law. (Page 589.)

4. COURTS—CONTROLLING DECISIONS—DECISIONS OF THE FEDERAL SUPREME COURT. The decisions of the·Federal Supreme Court, as to the notice in probate proceedings which will constitute due

---

[1] Snyder v. Murdock, 26 Utah 233, 73 Pac. 22. In re Bunting Estate, 30 Utah 251, 84 Pac. 109.

process of law, are conclusive on the state courts. (Page 591.)

5. EXECUTORS AND ADMINISTRATORS—DISTRIBUTION, OF ESTATE—DECREE—COLLATERAL ATTACK. Under Comp. Laws 1907, section 3779, providing that no decree affecting the title to realty made in a probate proceeding shall be void for want of notice where the executor or administrator was appointed by a court of competent jurisdiction on statutory notice, the failure to give the notice required by Comp. Laws 1907, section 3952, of the final settlement and distribution of decedent's estate, does not affect the validity of the decree of final distribution except on a direct proceeding. (Page 592.)

6. EXECUTORS AND ADMINISTRATORS—DECREE OF DISTRIBUTION—APPEAL. Under Comp. Laws 1907, section 3779, providing that no decree affecting title to realty made in probate proceedings shall be void for want of notice where the executor or administrator was appointed on statutory notice, and no objection to any subsequent order can be taken by a person claiming under decedent on account of want of notice except by direct application to the probate court, or on appeal, one may attack a consent decree of final distribution rendered without notice and without his appearing in court by applying to the probate court and showing his interest in the estate, and thus prosecute an appeal, though only parties to the record may, as a general rule, appeal. (Page 593.)

7. VENDOR AND PURCHASER—MARKETABLE TITLE. Though title depends on a question of fact, the title is marketable where the fact is clearly established or is undisputed, so as to leave no room for reasonable doubt. (Page 595.)

8. VENDOR AND PURCHASER—MARKETABLE TITLE—EFFECT OF DECREE. Where a doubt as to title was based on an instrument directly affecting the title, so that if the instrument was construed one way a third person would have an interest in the premises, and if construed another way he would not have any interest, the title, as a general rule, will not be rendered marketable by a decree of court as to the rights of the parties to such instrument, unless all the parties in interest were before the court so that a construction placed on the instrument would be binding on all who may be affected thereby. (Page 595.)

9. VENDOR AND PURCHASER—MARKETABLE TITLE—DEPENDENT ON DECREE. Where the question of title depended on the construction of a general law, a court adjudicating such title might pass on the question, regardless of whether all the parties alleged to have any interest in the premises are before the court; and, where the court holds the law to be in favor of the title, the title will be held marketable. (Page 595.)

10. VENDOR AND PURCHASER—MARKETING TITLE—DEPENDENT ON DE-
CREE. A title to real estate based on a final decree of distribu-
tion made by the probate court, by the consent of the parties
in interest actually before the court, is marketable, in the ab-
sence of any claim that all the parties in interest were not ac-
tually before the court, as the decree is *in rem* and is binding
on all persons. (Page 595.)

APPEAL from District Court, Third District; *Hon. M. L.
Ritchie,* Judge.

Action by William J. Barrette against S. A. Whitney.

Judgment for defendant. Plaintiff appealed.

AFFIRMED.

STRAUP, C. J., dissenting.

*Henderson, Pierce, Critchlow & Barrette* for appellant.

*Van Cott, Allison & Riter* for respondent.

APPELLANT'S POINTS.

What is a marketable title? (*Swayne v. Lyon,* 67 Pa.
436; *Glassman v. Conclon,* 27 Utah 463; *Turner v. McDon-
ald,* 76 Cal. 179; *Herman v. Somers,* 158 Pa. St. 424, 38
Am. St. Rep. 851, and note; *Moore v. Williams,* 115 N.
Y. 586, 12 Am. St. Rep. 844; *Vought v. Williams,* 8 L. R.
A. 591 [N. Y.] ; *Schenck v. Wicks,* 23 Utah 581.)

It is so fundamental that one ought not to have to state it,
that "No person shall be deprived of his life, liberty or prop-
erty without due process of law." Constitution of Utah,
article 1, sec. 7. The 14th amendment to the Constitution
of the United States provides that "No State shall . . .
deprive any person of life, liberty or property without due
process of law."

Appellant claims that to distribute this property to the
six persons who naively admit that they are the only heirs,
without notice to other persons who may be heirs, and with-

out giving such other persons an opportunity to be heard, is to deprive the latter persons of property without due process of law. This property vested in all the heirs immediately upon the death of the decedent, subject only to the possession, of the administrator appointed by the court for the purpose of administration, and such administrator has no authority of law to take the property of one heir and give it to other heirs upon the mere *ex parte* showing of such heirs.

Due process of law requires that a party shall be properly brought into court and that he shall have an opportunity when there to prove any fact which, according to the Constitution and the usages of the common law would be a protection to him. [3 Words and Phrases, 2231 (and cases).]

Webster's familiar statement of due process of law in the Dartmouth College Case, 17 U. S. 518, is "The general law which hears before it condemns, which proceeds upon inquiry and renders judgment only after trial." A like rule is laid down in the Slaughter House cases in 83 U. S. 36. Due process of law means a course of legal proceedings according to the rules and principles which have been established in our system of jurisprudence for the protection and enforcement of private rights. (*Pennoyer v. Neff*, 95 U. S. 714.) The first and simplest of these rules is that no man shall be deprived of his property by a decree of any court without first having an opportunity to be heard. See three columns of cases in the third volume of Words and Phrases, page 2244.

RESPONDENT'S POINTS.

A decree of distribution is a proceeding *in rem;* it may be made without any notice unless the statute provides otherwise, in which case if none is given it is still conclusive against collateral attack. It can only be questioned on appeal or by direct proceeding.

The decree of distribution is conclusive on every fact of which the court has power to adjudicate in the absence of

an appeal. A purchaser under a decree of distribution need not look beyond the decree itself. The decree of distribution is conclusive on all the world.

The decree of distribution was within the power of the lower court to render, and its judgment until reversed is binding on every other court.

(2 Black on Judgments, secs. 794, 808; *Grignon's Lessee v. Astor,* 2 How. [U. S.] 319; *McPherson v. Cunliff et al.,* 11 Serg. & Rawl., star page 422; *Wilson v. Hartford F. I. Co.,* 164 Fed. 817; *Good v. Norley,* 28 Iowa 208; *Sheldon's Lessee v. Newton,* 3 Ohio St., star page 494; *Mohr v. Manierre,* 101 U. S. 417; *Simmons v. Saul,* 138 U. S. 453; *Garrett et al. v. Boeing et al.,* 68 Fed. 57; *Knight v. Hollings,* 63 Atl. 40 [N. H.]; *Davis v. Gaines,* 104 U. S. 386; *McArthur v. Allen,* 3 Fed. 313; *Holmes v. Oregon, etc.,* 9 Fed. 229; *Tilton v. Cofield,* 93 U. S. 165; *Tilt v. Kelsey,* 207 U. S. 56; *Kearney v. Kearney,* 72 Cal. 591; *Hanley v. Hanley,* 114 Cal. 694; *Ladd v. Weiskopf* [Minn.], 64 N. W. 99; *Day v. Micou,* 18 Wall. 162; *Clark v. Rossier* [Idaho], 78 Pac. 358; *Amy v. Amy,* 12 Utah 278; *Hoagland v. Hoagland,* 19 Utah 103; *Erngreen v. Cronlund,* 19 Utah 416; *Chilton v. U. P. Ry. Co.,* 8 Utah 47.)

FRICK, J.

Appellant brought this action as a vendee of certain real estate to recover damages for a breach of an agreement to convey a marketable title by the respondent as vendor. Upon a trial to the court, the title was held marketable, and therefore that the agreement had not been breached, and judgment was entered accordingly, from which this appeal is prosecuted.

The judgment is based upon an agreed statement of facts, and hence no findings were made by the court. The facts agreed upon are substantially, as follows:

That on and prior to the 12th day of July, 1883, one Joseph Toronto was the owner in fee-simple of the real estate which appellant purchased from respondent; that said Toronto, on said 12th day of July, 1883, died intestate in Salt

Lake County; that thereafter, on the 1st day of December, 1900, after due notice, the district court of Salt Lake County, in its capacity and while acting as the probate court of said county, duly appointed one Joseph B. Toronto administrator of the estate of said Joseph Toronto, deceased; that said Joseph B. Toronto duly qualified and discharged the duties as administrator of said estate; that the petition praying for letters of administration, among other things, also stated the names and residences of the several persons who, it was alleged, constituted, all the heirs of said deceased; that an inventory and appraisement of the property belonging to said estate were duly made and filed, and notice to creditors duly published as provided by law; that after fully administering said estate said administrator, on the 4th day of April, 1902, filed his final account in said court, and therewith also filed an agreement signed by all the persons claiming to be the only heirs at law of said deceased, and asked that said estate, consisting wholly of real estate, be distributed among the persons named in said application for distribution; that no notice, either by publication or otherwise, was ever had or given of the hearing on said application for distribution; that on said 4th day of April, upon a waiver of notice by all of such heirs, and without any other or further notice, a hearing was had upon said application for distribution, and a decree was entered by said court, by the terms of which said court settled and approved the final account of said administrator, distributed, and partitioned the real estate of which said Joseph Toronto died seized among the several persons who claimed to be his heirs. The application and decree of distribution are made a part of the statement of facts.

The application for distribution, among other allegations, in substance, also contained the following: That all the debts and taxes due from said deceased had been paid; that all the heirs were of full age; that said deceased left no personal property, and the names of the heirs are given as they appear in the petition praying for letters of administration, and the part to be allotted to each is fully described; that all of the heirs and distributees joined in the

application; and that they each and all waived notice of the application for distribution. The application is duly signed by all the persons named therein and is duly verified.

In the decree were also contained the following findings;

"The above distributees are all the heirs of said deceased and the only persons interested in said decedent's estate, and all . . . have duly and regularly waived and dispensed with notice of the hearing . . . for distribution. . . . That said court has full jurisdiction of all the heirs of said deceased . . . and full jurisdiction . . . to distribute all the property of said deceased as the same is herein partitioned and distributed."

The portion assigned to each person is specifically described.

Appellant concedes that the appointment of the administrator and the proceedings were regular and according to law up to the time of making distribution. He, however, asserts that the failure to give any notice of any kind of the hearing on the application for distribution makes the decree of distribution void as to all persons who may have or claim to have any interest in said estate except those who signed the waiver of notice or participated in the distribution. In other words, appellant contends that such a notice is jurisdictional, and that a decree of distribution without a notice is vulnerable to collateral attack. Distribution to the interested parties, without notice, it is asserted, amounts to the taking of property without due process of law.

In this case it will be observed that no presumption that notice was given may be indulged, since it is admitted that no notice of any kind was given, but that the publishing or giving of such a notice was waived by the several persons who claim to constitute the heirs of the decedent. No doubt, if such a notice is jurisdictional, as appellant asserts, then the decree cannot be binding except on those who participated in it, since the persons who claim to be the only heirs could not, by such a claim, exclude or bind others who may have or claim to have an interest in the estate. The whole question therefore hinges upon whether notice of the hearing on the application for distribution is essential to give the

court jurisdiction. Upon this question the courts are not in perfect harmony. Much of the diversity of opinion, however, arises from the fact that the appellate courts have not always agreed upon the character of probate proceedings, nor upon status of probate courts. Some of the courts hold that probate courts are courts of special and limited jurisdiction whose records must affirmatively disclose jurisdiction, while others hold that they are to be treated as courts of general jurisdiction with all the presumptions incident to such courts. Again, the appellate courts generally regard probate proceedings as proceedings *in rem,* while a small number apparently treat such proceedings as *in personam.* That is, while such proceedings are, as a general rule, regarded by all courts as proceedings *in rem,* yet some of the courts, when they come to apply the doctrine of notice, seem to disregard the rule applicable to proceedings *in rem* and apply the rule applicable to proceedings *in personam.* We make this observation for the reason that, if these distinctions are not kept in mind when the cases are examined, the reader may easily become confused and may conclude that the conflict among the courts with respect to probate proceedings is much greater than it really is. The divergence that has arisen among the appellate courts with respect to the effect to be given to the judgments of probate courts, and the reasons therefor, are, in part, stated in section 145 of volume 1 (2d Ed.) of Woerner on American Law of Administration. The following are some of the well-considered cases which hold that probate proceedings are, in their nature, proceedings *in rem,* and to which the doctrine of notice in such proceedings applies: *Grignon's Lessees v. Astor,* 2 How. 319, 11 L. Ed. 283; *Sheldon's Lessee v. Newton,* 3 Ohio St. 494; *Wilson v. Hartford Ins. Co.,* 164 Fed. 819, 90 C. C. A. 593, 19 L. R. A. (N. S.) 553; *Good v. Norley,* 28 Iowa 188 (by a divided court); *Mohr v. Manierre,* 101 U. S. 417, 25 L. Ed. 1052; *Simmons v. Saul,* 138 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054; *Garrett v. Boeing,* 68 Fed. 51, 15 C. C. A. 209; *Kearney v. Kearney,* 72 Cal. 591, 15 Pac. 769; *Hanley v. Hanley,* 114 Cal. 690, 46 Pac. 736; *Ladd v. Weiskopf,* 62

Minn. 29, 64 N. W. 101, 69 L. R. A. 785; *Clark v. Rossier,*
10 Idaho 348, 78 Pac. 358. The following text-writers also
state the rule to be as given in the foregoing cases: Waples'
Proceedings in Rem, sec. 162; 2 Black on Judgments, secs.
635-639, 794, 808.

This court, in *Snyder v. Murdock,* 26 Utah 233, 73 Pac.
22, has also, inferentially at least, held that probate pro-
ceedings are, in their nature, proceedings *in rem.* In a num-
ber of the foregoing cases it is also directly held, as it nec-
essarily must be, that a decree of distribution is a proceed-
ing *in rem* and not *in personam.* By referring to our stat-
utes upon the subject of administration, it will be seen that
such proceedings are treated as proceedings *in rem* and not
*in personam.* Section 3817, Comp. Laws 1907, among other
things, provides that the petition for letters of administra-
tion must state the "facts essential to give the court juris-
dicion of the case, and, when known to the applicant, he
must state the names, ages, and residences of the heirs of
the decedent, and the value and character of the property."

Section 3818 is as follows:

"When a petition praying for letters of administration is filed,
the clerk must set the petition for hearing and give notice thereof
by publication or by posting, and by mailing of notices to the heirs."

Section 4026 provides the time for which notice must be
given, and this court, in a direct proceeding (*In re Bunt-
ing's Estate,* 30 Utah 251, 84 Pac. 109) held that, unless
the notice is given for the time and in the manner provided
in said section, the court acquires no jurisdiction of the
proceedings. From what is said in the opinion in that case
it is at least inferable that if the notice is given as provided
by the statute, the court acquires jurisdiction of the whole
case; that is, of the property and of the persons interested
in the estate. In other words, from what is there said it
would seem that the notice which is given upon the filing
of the petition for letters of administration is the jurisdic-
tional notice, the giving of which, when given as required
by the statute, brings not only the property, but the persons
interested therein, within the jurisdiction of the court. In-

deed, no other conclusion seems permissible if section 3779 of our statutes is to be given force and effect. That section reads as follows:

"No order or decree affecting the title to real property, heretofore or hereafter made in any probate or guardianship matter, shall be held to be void at the suit or instance of any person claiming adversely to the title of the decedent or ward, or under a title not derived from or through the decedent or ward, on account of any want of notice, defect, or irregularity in the proceedings, or of any defect or irregularity in such order or decree, if it appears that, before the order or decree was entered, the executor, administrator, or guardian, as the case may be, was appointed by a court of competent jurisdiction, upon such notice as was or may be prescribed by law; and, in an estate in which a competent court shall have appointed an executor, administrator, or guardian upon due notice, no objection to any subsequent order or decree therein can be taken by any person claiming under the deceased or under the ward, on account of any such want of notice, defect, or irregularity, in any other manner than on direct application to the same court, made at any time before distribution, or on appeal."

Section 4037 provides as follows:

"If all persons interested in an estate join in any petition, or signify in writing their assent thereto, notice may be dispensed with and the hearing had at any time."

There are a number of other sections which provide for notice and prescribe the method of procedure, but it is not deemed material to refer to any of them, since to do so would not shed any light upon or aid in any way in disposing of the real question before us.

From the provisions contained in section 3779, it seems reasonably clear that probate proceedings are deemed to be proceedings *in rem,* and that the court acquires jurisdiction of the *res*—that is, the property of the estate—and of all the persons who have or claim to have any interest in the property by the notice required to be given for the appointment of an administrator or executor, as the case may be. If this be so, then all other notices provided for, however important they may be, in certain cases and under certain circumstances, are, never-

theless, not jurisdictional; that is, are not made essential in conferring power upon the court to act, and hence to disregard them would constitute a mere irregularity which would have to be assailed and corrected in a direct proceeding, and, if not so attacked, in the absence of fraud, would be conclusive as to all the world. That such is the effect of that statute is contended by respondent, while appellant asserts the contrary.

Quite a large number of cases in support of both contentions are cited by respective counsel. The leading case cited by counsel for respondent is *Grignon's Lessees v. Astor, supra.* In that case the question of the want of notice of the hearing on application by the administrator to sell real estate of the deceased to pay debts was involved. The question that the statutory notice was not given was raised in a collateral proceeding, and the Supreme Court of the United States in effect held that probate proceedings, in their nature, were proceedings *in rem;* that the probate court had acquired jurisdiction of both the property and all persons interested therein by the appointment of the administrator, and thereby, through him, obtained possession of the estate with full power to administer the same; that the notice of the hearing to show cause was not jurisdictional, and hence the judgment ordering a sale not assailable in a collateral proceeding. At page 339 of 2 How. (11 L. Ed. 283), Mr. Justice Baldwin, speaking for the court, said:

"The record of the county court shows that there was a petition representing some facts by the administrator, who prayed an order of sale; that the court took these facts which were alleged in the petition into consideration, and for these and divers other good reasons ordered that he be empowered to sell. It did then appear to the court that there were facts and reasons before them which brought their power into action, and that it was exercised by granting the prayer of the petitioner."

It is further said, at page 340 of 2 How. (11 L. Ed. 283), that the provisions of the statute with respect to giving notice to the interested parties of the order to show cause why a license to sell the land should not be granted did

"not affect the jurisdiction of the court. They apply only to its exercise." It is further said:

"The court having power to make the decree, it can be impeached only by fraud in the party who obtains it. [*United States v. Arredando*] 6 Pet. 729 [8 L. Ed. 547]. A purchaser under it is not bound to look beyond the decree; if there is error in it, of the most palpable kind, if the court which rendered it have, in the exercise of jurisdiction, disregarded, misconstrued, or disobeyed the plain provisions of the law which gave them the power to hear and determine the case before them, the title of the purchaser is as much protected as if the adjudication would stand the test of a writ of error; so where an appeal is given but not taken in the time prescribed by law. These principles are settled as to all courts of record which have an original general jurisdiction over any particular subjects."

In *Wilson v. Hartford Ins. Co.*, 164 Fed., at page 819, 90 C. C. A., at page 595, 19 L. R. A. (N. S.) 553, Mr. Justice Sanborn states the doctrine in the following language:

"A proceeding in a probate court to administer upon the estate of a deceased person is a proceeding *in rem*, not *in personam*. The property within the jurisdiction of the court is the defendant, the executor or administrator is its representative, and all claiming any interest in that property under the deceased are parties to the proceeding."

In *Sheldon's Lessee v. Newton*, 3 Ohio St. 494, in referring to the effect that the failure to give the heirs notice of an application by the administrator to sell real estate to pay debts has upon the jurisdiction of the court, the Supreme Court of Ohio uses the following language:

"The heir was required to be made a party to the proceeding with a view to his having notice; but it is nowhere intimated that a failure to give the notice should deprive the court of jurisdiction over the property. I am therefore strongly inclined to the opinion that such an omission goes only to the regularity of the proceeding, and not to the jurisdiction of the court."

It was also, in effect, held that probate proceedings are proceedings *in rem*, and that, when the jurisdiction of the probate court has once attached through the appointment of an administrator by the giving of a statutory notice, subse-

quent notices with respect to the intervening proceedings
are not jurisdictional, and a failure to give them does not
make the court's decree collaterally assailable.

In speaking of this question, Mr. Chief Justice Dillon,
in *Good v. Norley,* 28 Iowa, at page 208, said:

"The following cases relating to administrators' sales, and that,
too, under statutes providing that notice of the application should
be given in terms as strong as in our statute, if not stronger, hold
that the proceeding is *in rem*; that the provision as to notice is
directory; and that, if not given, it does not deprive the court of
jurisdiction; and hence an order for a sale, without such notice,
or upon notice alone to the guardian, while irregular, and reversible
on appeal, is not void, when collaterally attacked."

In *Mohr v. Manierre,* 101 U. S. 423, 25 L. Ed. 1052, in
speaking of the effect of a want of notice in probate pro-
ceedings after the court has acquired jurisdiction of the
estate, Mr. Justice Field says:

"It is apparent from these sections that the publication of notice
of the hearing is only intended for the protection of parties having
adversary interests in the property, and *is not essential to the juris-
diction of the court.*" (Italics ours.)

For other similar cases relating to probate proceedings,
and where like expressions are used, see, *McPherson v. Con-
liff,* 11 Serg. & R. (Pa.) 422, 14 Am. Dec. 642; *Garrett v.
Boeing,* 68 Fed. 51, 15 C. C. A. 209; *Tilton v. Cofield,* 93
U. S. 163, 23 L. Ed. 858; *Ladd v. Weiskopf,* 62 Minn. 29,
64 N. W. 101, 69 L. R. A. 785; *Clark v. Rosier,* 10 Idaho
348, 78 Pac. 358.

The only question, therefore, is: Did the district court
of Salt Lake County, while acting as probate court, have
jurisdiction of the property of the deceased and of the par-
ties interested therein? While the probate proceedings, in
their nature, are procedings *in rem,* it does not follow that
no notice of any kind to the interested parties is necessary
in order to bind them. If the court, however, has once
acquired jurisdiction of the property and of the parties by
the giving of the statutory notice, it is not easy to perceive
how a judgment or decree affecting either or both is col-

laterally assailable by any one interested in the property, although he may at any such proceeding, either by himself or through an attorney, have taken no part therein. When the notice for the appointment of an administrator was given as required by statute, we think that the effect of such a notice was to bring all the parties who had or acquired any interest in the estate into court. We cannot agree with counsel for appellant that the effect of this notice was only to bring the parties into court for the one purpose of appointing the administrator. While this was its immediate effect, it was clearly not its only purpose or effect.

The effect of such a notice is to appoint some one, usually the person named in the petition, to administer the estate, and, for that purpose, the court is given full power or jurisdiction over the property belonging to the deceased person. All the interested parties are thus notified that the estate of their ancestor is, in contemplation of law, placed under the charge and control of the court, and that the court will, in due course of time, deal with it as the property of the deceased person; that the court, in due course of time, will dispose of it and distribute it to those who may be entitled to it. All parties in interest must take notice of the law, and while they, as a general rule, may rely on what may be termed a presumption that the court will obey the law, they, nevertheless, may not remain silent when the court erroneously departs from or disregards any of the provisions of the law, and then assail the erroneous acts of the court collaterally. We think the more reasonable and the safer doctrine is that, when the statutory notice that an administrator will be appointed is given, such a notice not only is notice to the parties of the fact, but is notice to all the world, that the court, by the appointment of an administrator, will take charge of the property of the deceased to administer it, and that it will finally distribute the remainder, if any, to the heirs of the deceased.

As we have seen, the statute requires that the names, ages, and places of residence of the heirs must be given in the petition for the appointment of an administrator. It seems

quite clear to us that this requirement is not for the sole purpose of appointing an administrator. Quite true, the proposed applicant for appointment may be entirely satisfactory to all the interested parties, and they may not desire to contest his appointment; but the court is not absolutely bound to appoint the applicant. Any suitable person, if there be one within the class entitled to appointment other than the applicant, may be appointed. If such another were appointed, could any interested person thereafter collaterally assail such an appointment? We think no one would so contend. If all parties in interest are thus notified and are brought into court for one purpose which affects their rights by reason of interest in the property of the deceased, why are they not in court generally, and why does not the court, in the absence of an express statute to the contrary, acquire jurisdiction over them for any purpose which may affect their interest? It is unreasonable to suppose that they are partly in court and partly out of court. We think the true distinctions are those laid down by Chief Justice Dillon in *Good v. Norley* and by Mr. Justice Field in *Mohr v. Manierre, supra,* namely, that the subsequent notices required by the statute are directory merely, or that they are intended for the convenience and protection of the parties in interest and are not jurisdictional. The heirs may be numerous, and may live in different parts of this, or even in some other country. When their names and places of residence are thus given, or when the fact is made to appear that they are unknown, as it must be, in the petition for letters of administration, the probate court is fully advised with respect to the true situation. While the court may assume that, as a matter of law, and for the purpose of jurisdiction, both the known and the unknown heirs are before the court, yet, whether the heirs are living in different states or otherwise, it cannot be presumed that a prudent and careful judge would ordinarily proceed to distribute without notice to the heirs or to some accredited person representing them.

There are various provisions in the statute by which full power and discretion is vested in the probate court with respect to the time and manner of giving notice during the course of administration, and the court may thus, in every case, suit the notice to the circumstances and conditions confronting it. But the mere fact that such notices may be provided for does not necessarily make them jurisdictional. Even if the legislature had not so stated in express terms, the court should hesitate to declare them so, since much more mischief would result from permitting proceedings in after years, when innocent parties can no longer be placed in *status quo,* to be collaterally assailed, than could possibly arise by holding the judgments and proceedings of courts having jurisdiction and power to proceed conclusive as against such attacks. This is the doctrine upon which section 3779 *supra* is based. Probate proceedings being *in rem,* it was within the power of the legislature (within reasonable bounds) to say what should constitute sufficient notice to give the court jurisdiction of the estate and what should be sufficient to apprise those interested therein that the court will administer and ultimately distribute the property among the parties in interest. Where the notice is sufficient to accomplish this purpose (and no one contends that the notice provided for by our statute is not sufficient), the courts generally hold, and especially the Supreme Court of the United States, which is the final arbiter upon this subject, expressly holds, that such a notice constitutes what is termed "due process of law." Our legislature having thus spoken upon the subject, and by what it has said has clearly manifested its intention that, when those who claim an interest in the property of a decedent are notified of the petition for the appointment of an administrator of the decedent's estate, they are in court for all purposes, we ought not, except for the most cogent reasons, interfere with the legislative intent as expressed in the law.

In this connection, it is a matter worthy of note that, while notices for various other hearings were expressly pro-

vided for in the several sections of our statutes, no express provision is found which required a notice on the application for distribution to be given until 1905, when section 3952 was amended. (Laws 1905, p. 68, c. 60.) Such a notice was, however, implied from what is said in other parts of the statute, and expressly so from what is said in section 4037, which we have quoted. But, as we have seen, section 3779 expressly provides that a failure to give such a notice shall not affect the judgments or decrees except upon a direct proceeding; hence the effect of a failure to give the notice is expressly provided for, and had it not been for the earnestness with which able counsel have pressed the matter to our attention, and of its importance and far-reaching effects, we should have felt content to dispose of the question by referring to our statutes merely. Counsel have cited no case, and by a very careful research we have been unable to find any, where, under statutes like ours, or under similar ones, any court has held a decree of distribution without special notice void and collaterally assailable. True, there are some expressions in some of the opinions in the cases cited by appellant that might lead one to infer such a result. But upon a close analysis of the opinions such a conclusion, in our judgment, is not intended. As an instance, we refer to *Ruth v. Oberbrunner,* 40 Wis. 269, which is one of the few cases in which it is held that a notice for distribution is jurisdictional, and hence, in the absence of such notice, the decree is open to collateral attack. A careful reading of that case, however, will disclose that the Supreme Court of Wisconsin, in passing judgment, construed the Wisconsin statute as mandatory and jurisdictional. In the court's opinion it is, in effect, held that, unless the statute dispensed with such a notice, or made it nonessential in express terms, the court would not take the responsibility of declaring it to be so. But it should not be overlooked that the Supreme Court of Wisconsin has always held to an extreme view with respect to the giving of notices. This is apparent from the early cases in that court, as appears from *Gibbs v. Shaw,* 17 Wis. 197, 84 Am. Dec. 737, and *Bresee v. Stiles,* 22 Wis.

120, which latter case was followed in *Ruth v. Oberbrunner, supra.* This is perhaps better illustrated in the case of *Mohr v. Tulip,* 40 Wis. 66. In that case the doctrine was carried to its extreme limits, and the decree granting the guardian of an insane person permission to sell without notice to the insane person was held subject to collateral attack upon the sole ground that the insane person was not notified of the application by the guardian. The same plaintiff was, however, taken into the Federal Courts, where, under the same state of facts, it was **4** held by the Supreme Court of the United States, in *Mohr v. Manierre,* 101 U. S. 417, 25 L. Ed. 1052, that the notice was not essential nor jurisdictional, and held the decree conclusive upon a collateral attack. Subsequently the Supreme Court of Wisconsin, in a case by the same plaintiff, namely, *Mohr v. Porter,* 51 Wis. 487, 8 N. W. 364, modified and in part overruled its rulings in *Mohr v. Tulip, supra,* to conform to the rulings of the Supreme Court of the United States in *Mohr v. Manierre, supra.*

In addition to the Wisconsin case, it may be said that the case of *Shriver v. Reister,* 65 Md. 278, 4 Atl. 679, holds that the notice of the application for distribution is jurisdictional. But this case is also based upon a Maryland statute. Mr. Van Fleet, in his work on Collateral Attack, refers to the Wisconsin and Maryland cases in section 403 of his work. While it is apparent that he does not agree with those courts, nor with the views entertained by them with respect to the effect of such a notice, yet all he says with respect to them is: "The distributees were in court all the time. They had an opportunity to rectify any errors when he came to obtain his final discharge." It will thus be seen that Mr. Van Fleet holds to the general doctrine that the notice for the appointment of an administrator or executor brings not only the property, but all the parties in interest, into court for all the purposes of administrating upon the estate in which the application and appointment were made. While we have carefully examined all the cases cited by counsel for appellant, it would subserve no useful

purpose to refer to any of them at length. Many of the cases referred to deal with attacks by appeal, and, whatever the expressions in those may be, they are not authoritative when the question is raised upon a collateral attack. The cases, other than those upon a direct attack to which we have been referred, generally involved a construction of some particular statute which the courts held controlling and which had not been followed.

It is further contended, as we understand appellant, that no one except the persons named in the decree could have appealed from it. He asserts that, if this be not conceded, an appeal would, nevertheless, have been of no avail, since the record would not have disclosed that any one else had any interest except those mentioned in the decree. The contention, in our judgment, is not tenable. While the decree is not assailable on collateral attack, it, nevertheless, would have been so upon a direct attack by appeal. Indeed, section 3779 expressly authorizes a decree to be thus attacked. By application to the probate court, any one having an interest could make his interest appear, even after judgment, and thus prosecute an appeal. True, as a general rule, only parties to the record may prosecute appeals. But this is upon the ground that, in ordinary proceedings, parties and their privies are the only persons bound by the judgment. But, as we have said, probate proceedings are proceedings *in rem,* and, when the statutory notice is given to bring the property and the persons interested therein within the jurisdiction of the court, all the interested parties are bound by the judgment and decree. Such cases, therefore, as shown by Mr. Elliott in his App. Pro., sec. 136, constitute an exception to the general rule, and parties in interest may appeal notwithstanding the fact that they are not identified by the record. They have the right to make the record show their interest, or that they claim an interest, and when this fact is made to appear they may appeal and attack the judgment upon any ground that parties might otherwise attack it. In this case any one interested might have shown the irregularity of the proceed-

ing, and that by reason of that fact he was prejudiced in his rights, and the cases are numerous where the appellate courts have reversed judgments or decrees for such irregularities. We have no doubt such would have been the rule in this case upon a proper showing. In this case it is conceded that every person who claimed an interest in the estate was brought into court for the purpose of the appointment of an administrator, and that any one could have appealed from the order of appointment and **6** unless the appointment was attacked on appeal no one could have assailed it collaterally. If, therefore, the persons interested in the estate were parties for that purpose, when, how, and why did they, or any one of them, cease to be parties for the purpose of prosecuting any appeal authorized by statute? We confess our inability to perceive why any and every interested person could not have appealed from any appealable order or decree, and for the same reasons we can see no good reason why all are not bound. We remark that we do not wish to be understood as passing upon the effect of a failure to give notice upon an application for the sale of real estate by an administrator. Upon that subject our statutes speak in explicit terms, and we refrain from expressing any opinion.

It is, however, urged that a title may be good and still not be marketable. This, no doubt, is true. It may be that there is an apparent outstanding interest in some unknown heir, who, if alive, would be entitled to claim such interest. Several questions might thus arise, namely: Is the unknown heir alive? If not, did he survive the ancestor, and, if he did not, are there any of his heirs who succeed to his rights? It may also be the case that, if it were conceded that an unknown heir may still survive, yet that his interest is barred by an adverse possession. There are numerous cases in the books where such questions are discussed.

The case of *Ferry v. Sampson*, 112 N. Y. 415, 20 N. E. 387, is a case where there was an apparent outstanding in-

terest in an unknown heir. This heir had, however, been
absent and unheard of for forty years at the time the case
came on for trial, and the court held that the presumption
of his death, and that he left no heirs, under the facts and'
circumstances of that case, was so strong as not to leave such
a doubt as would make the title unmarketable. The title
was therefore held marketable, and the vendee was required
to complete his purchase.

In another case, decided by the same court a year later
(*Vought v. Williams*, 120 N. Y. 253, 24 N. E. 195, 8 L. R.
A. 591, 17 Am. St. Rep. 634), and cited by counsel for ap-
pellant, an opposite result was reached. The result in the
latter case, however, was based upon the fact that the un-
known heir had not been unheard of for a sufficient period
of time to constitute a presumption sufficiently strong to
remove the doubt that he might return and claim his in-
terest.

Another illustration of this character is presented by the
case of *Swayne v. Lyon*, 67 Pa. 436, also cited by appellant.
In that case the title was based upon a judgment which was
held to be open to collateral attack by a party who had some
right to or interest in the land in question. The court
therefore held the title so doubtful as to make it unmarket-
able.

Another illustration is found in the case of *Hedderly v.
Johnson*, 42 Minn. 443, 44 N. W. 527, 18 Am. St. Rep.
521. That case involved the construction of an instrument
from which it was to be determined whether an easement
could or could not successfully be claimed in the property
which was the subject of sale. The vendee claimed that,
since it was possible that an easement could be claimed in
the property, therefore the title was not marketable. The
court, however, held that whether an easement could be
claimed or not depended upon certain facts which were so
clearly established as to leave no reasonable doubt that an
easement could not be successfully claimed in the property,
and hence the title was held marketable, and the vendee
was required to receive it.

While the cases are very numerous, the ones we have cited above illustrate the doctrine quite as well as this could be done by citing a larger number.

It will thus be seen that, even though the title depends upon a question of fact, if the fact upon which the title rests is clearly established, or is undisputed, so as to leave no room for reasonable doubt with regard to the title, it will be held marketable. (Maupin on Marketable Title [2d Ed.], p. 730.) But the title may be doubtful upon questions of law, and hence unmarketable, as well as upon questions of fact. If a doubt arises upon a question of law, it usually arises either by reason of the uncertainty of the meaning of some instrument which affects the title or from the construction to be given to some general law which in some way is involved. When the doubt is based upon some instrument which directly affects the title, so that if the instrument be construed one way some third person may have some interest in the land in question, and if construed the other he will not have any interest, the courts usually refuse to declare the title marketable, or otherwise, unless all the parties in interest are before the court, so that the construction placed upon the instrument will be binding upon all who may be affected by the construction placed upon it. Where, however, the question depends upon the construction of a general law merely, the courts ordinarily pass upon the question regardless of whether all the parties who are alleged to have some interest are before the court or not. Ordinarily, when the question whether the title is marketable depends upon a general law of the land, the title will be held marketable if the court holds the law to be in favor of the title. (Maupin on Marketable Title [2d Ed.], pp. 713, 714.)

If we apply the doctrine to be deduced from the authorities to this case, how can it be said that the title to the land in question is, or ever was, doubtful so as to be unmarketable within the meaning of that term? The only objection to the title is that the final decree

of distribution made by the probate court, and upon which appellant's title rests, is not binding except upon such persons as were actually before the court and consented to that decree when it was made. It, however, is nowhere alleged, nor is it claimed, that all the parties in interest were not actually before the court. The only claim is that there is a possibility that there may be some others who were not before the court. If all the interested parties were in fact before the court, then no doubt the title would be perfect, since all the parties in interest would be bound by the decree. Can we assume, as a matter of law, that there is an unknown claimant somewhere who will hereafter assert his claim in the absence of an allegation that such a claimant at one time existed? In all the cases that have come under the writer's observation, there was some claim that at one time at least there was some person in existence who sustained such a relation to the land in question as would give him an interest if still alive. In the case at bar we are asked, however, to assume two things: (1) That an unknown heir once existed; and (2) that he is still alive. If it were claimed that such an heir once existed, it might well be that, under the facts and circumstances of this case, he would not be presumed to be dead; but can it be assumed, without any allegation to that effect, that some heir other than those who were parties to the final distribution ever existed? It might be that if it were conceded that the probate court had not jurisdiction of all the persons who might have, or claimed to have, an interest in the land in question when the decree of final distribution was made, and that the decree was binding only upon those who consented thereto, the title would not be held, as a matter of law, to be so free from doubt that a court would declare it marketable, although there was no allegation that at one time some heir existed who did not consent to the decree, and who was not included in the distribution. But when, as in this case, it is held that the probate court had jurisdiction of all the interested persons, and that the decree of final distribution under our statute is binding upon all whether consenting thereto or

not, or whether notified of the application for final distribution or not, how then can it be said that there remains a doubt respecting the title upon the ground before stated? If, in addition to this, it be remembered that there is neither allegation nor claim that any other heir than those named in the decree of final distribution ever existed, and, further, that we have held that, if there were such, they are, nevertheless, bound by the final decree the same as those who were actually' present and consented thereto, then how can it be said that this title is any more doubtful than any other title would be that is based upon a decree of final distribution, however perfect the proceedings leading up to such a decree might be? Is it not manifest that, in view of our statute which makes the failure to publish a notice of the character in question a mere irregularity, which must be corrected, if corrected at all, in a direct proceeding, and further that there is not even an allegation or claim that there now exists, or that there ever existed, some person who is not bound by the final decree of distribution upon which the title in question is based, that there is no tangible ground upon which to base a reasonable doubt concerning the marketability of the title in question?

From what has been said, it follows that the district court committed no error in holding that the title in question is a marketable title, and hence that the respondent committed no breach of his agreement to convey a marketable title in view that he conveyed all that he had agreed to convey.

The judgment is .therefore affirmed, with costs to respondent.

McCARTY, J., concurs.


STRAUP, C. J.

I dissent. On the 17th day of October, 1908, the defendant and respondent sold and conveyed to the plaintiff and appellant certain real estate situate in Salt Lake City. It is alleged in the complaint: That at the time of the sale

and conveyance, and as part of the same transaction, "the defendant agreed in writing with plaintiff that, in the event the title of said real estate should not be good and marketable, then he, the said defendant, would either take the necessary steps to make the title good and marketable, at his own expense, or that he would pay plaintiff the sum of one hundred and fifty dollars, being the amount which, as estimated by plaintiff and defendant, would be sufficient to defray the expense of any proceeding necessary to render the title to said real estate good and marketable;" that the title to said real estate was not good and marketable; that the plaintiff demanded of the defendant that he either take the necessary steps to render the title good and marketable, or pay the plaintiff the sum of one hundred and fifty dollars for such purpose; and that the defendant refused and neglected to take any such steps, and also refused and neglected to pay plaintiff any part of the one hundred and fifty dollars. A judgment was demanded against the defendant for the sum of one hundred and fifty dollars. The defendant admitted all the allegations of the complaint except that the title was not good and marketable. Upon an agreed statement of facts the court found the title good and marketable, and rendered a judgment in favor of the defendant and dismissed the complaint. The real question, therefore, in the case, is that of marketable title. The agreed statement of facts shows, among other things, that the land in question was owned by Joseph Toronto at the time of his death, who died intestate in 1883. No administrator of his estate was appointed until 1900. The statute required the giving of a notice for the distribution of estates. A general provision of the probate Code (Comp. Laws 1907, sec. 4037), however, provides that: "If all persons interested in the estate join in any petition or signify in writing their assent thereto notice may be dispensed with and the hearing had at any time." On the 4th day of April, 1902, certain persons, alleging that they were the heirs of the deceased, petitioned the court to distribute the estate, consisting principally of real estate, to them, and waived the giving of notice. The court there-

upon, and on the same day, distributed the property of the estate to them without notice. The land in question was, under such petition, and by such a proceeding distributed to Frank and Ernest Toronto, heirs of the deceased. They thereafter sold to Whitney, the defendant and respondent. He sold and conveyed it to the plaintiff the appellant.

I think it is well settled that title to real estate may be good, and yet may not be marketable. . It it is not necessary to show that the title is bad to establish that it is not marketable. The court may consider and hold the title good, and yet hold it not marketable, if there be sufficient doubt and uncertainty in respect of the title to form the basis of litigation, or if it invites and exposes the party holding the title to litigation. The purchaser is entitled to have a title that will enable him to hold his land in peace, and, if he wishes to sell it, to be reasonably sure that no flaw or doubt will arise to disturb its market value. And if there be doubt it cannot be thrown upon the purchaser to contest that doubt and encounter the hazards of litigation. If it were otherwise, the purchaser could be compelled to buy a lawsuit, which might be a very serious loss to him both of time and money, even if he ultimately succeeded. These principles are found stated in, and are taken from, the following cases: *Vought v. Williams,* 120 N. Y. 253, 24 N. E. 195, 8 L. R. A. 591, 17 Am. St. Rep. 634; *Herman v. Somers,* 158 Pa. 424, 27 Atl. 1050, 38 Am. St. Rep. 851; *Townshend v. Goodfellow,* 40 Minn. 312, 41 N. W. 1056, 3 L. R. A. 739, 12 Am. St. Rep. 736; *Swayne v. Lyon,* 67 Pa. 436; *Turner v. McDonald,* 76 Cal. 179, 18 Pac. 262, 9 Am. St. Rep. 189.

When the Toronto estate was distributed, without notice, to certain persons claiming to be the heirs of the deceased, I think sufficient doubt and uncertainty as to the title arose to render it not marketable, though this court should afterward entertain the opinion in favor of the title, and should decide that the probate court was not without jurisdiction to make the distribution without notice. I do not think that the question is so clear and free from doubt that such an

opinion and conclusion, until decided by the court of last resort, cannot fairly and reasonably be questioned by other competent persons. Upon the very question involved, I find, as stated by Mr. Justice Frick, that the au' rities are not in perfect harmony. If, therefore, the courts are divided upon the question, and entertain different conclusions as to the jurisdiction of the court to make such a distribution without notice, I do not see why it should not be said that the title of property affected by such a distribution is neither doubtful nor uncertain in this jurisdiction until the court of last resort has set the matter at rest.

In the next place, I am not satisfied with the conclusion reached by the other members of the court that when a court in a probate proceeding has appointed an administrator, upon proper notice, it thereby obtained jurisdiction of subject-matter, and all the parties interested in the estate, for all subsequent proceedings in the course of administration, including a settlement and distribution of the estate, and that whatever action the court thereafter took, or whatever proceedings were thereafter had, though in violation of the prescribed procedure, and of the giving of notice as required by the statute, constituted but irregularities, and did not affect jurisdiction.

I do not think that the adjudged cases go to the extent of holding that, when a proper notice has been given for the appointment of an administrator, the court acquired not only jurisdiction to make the appointment, but also acquired jurisdiction, after the appointment, to do all other things in the course of administration, including the distribution of the estate, notwithstanding, to do them, a notice was also required to be given as prescribed by the statute, and that such notice was not given. Neither do I think that section 3779 of the statute is open to such a construction. The first portion of the section provides that no order or decree affecting the title to real property made in any probate matter shall be held void at the suit or instance of any person claiming adversely to the title of the decedent, or under a title not derived from or through the decedent, on account

of any want of notice of the decree or irregularity in the proceeding, if made to appear that the administrator was appointed by a court of competent jurisdiction, upon notice as prescribed by law. This is not a suit where a litigant is claiming adversely to the title of the decedent, or under a title not derived from or through the decedent. The latter portion of the section provides that, when a "competent court" shall have appointed an administrator upon due notice, no objection to any subsequent order or decree therein can be taken by any person claiming under the deceased, "on account of any such want of notice," in any other manner than on direct application to the same court "made at any time before distribution," or on appeal. When the statute reads that no objection to any subsequent order, etc., can be taken "on account of any such want of notice," what notice is meant? I think, the notice just mentioned and referred to in the section—the notice given for the appointment of the administrator. If, for instance, after an administrator has been regularly appointed of an estate in which the decedent left A., B., C., and D. surviving him as his heirs at law, A., B., and C. should thereafter petition the court, and therein allege that they are the only heirs, waive the giving of notice for distribution of the estate, ask the court to distribute all the property of the estate, consisting of real and personal property, to them, I do not think such a decree or judgment of distribution, made on the same day and at the same time of the filing and presentation of the petition, and without notice, would be binding upon D., and would divest him of all right, title and interest in and to the property of the estate, or bar him from thereafter asserting or claiming any right, title, or interest therein, except on appeal, or "on direct application to the same court made at any time before distribution."

When a distribution is made, as was the case in the Toronto estate, on the same day of the filing and presentation of the petition for distribution, and without notice, I do not see how any one interested in the distribution or entitled to a distributive share of the estate, and who had

no notice of such a proceeding, could "at any time before distribution" apply to the court making the distribution, for relief from such a judgment or decree of distribution. To say that he may assail the judgment on appeal (if it is his good fortune to somehow obtain information within the time, six months, in which an appeal may be taken, that proceedings of distribution had been had and a judgment rendered) is also but to say that he may directly attack it. To say that he may not attack the judgment except on appeal, "or on direct application to the same court at any time before distribution," is to assert that the judgment has all the binding effect of any other judgment. Under our statute, when a person dies intestate, his property passes to his heirs. Of course, it is subject to debts and expenses of administration. When an administrator is appointed, the property is subject to the control of the court for the purposes of administration. But the statute directs to whom the property shall be distributed and prescribes the proceedings to be had for distribution. After an administrator has been appointed, on proper notice, the court may not, upon his petition, or another, without notice, take the property away from the heirs and give it to a stranger; nor may the court, without notice of any kind take it away from one heir entitled to a distributive share, and give all of it to other heirs; nor can it be successfully asserted that such action, so taken in defiance of law and of the requirements of the statute, is but an irregularity, and assailable only on direct attack. When the court takes property from one person to which he is entitled and gives it to another, such person is entitled to notice, and to his day in court. He is entitled not only to his day in court on an appeal, but to his day in court before the tribunal that takes it away from him.

It, however, is said that the plaintiff neither alleged nor proved that the deceased left legal heirs who were entitled to a distributive share, other than those who petitioned for distribution, waiving notice, and to whom the property was distributed. That implies that if the plaintiff had shown

that there was an heir who was entitled to a distributive share, and did not join in the petition waiving notice for distribution, and had not obtained his distributive share, then the court was without jurisdiction to make the distribution. But since the plaintiff did not aver nor prove the existence of such an heir, then the court had jurisdiction. Thus the question of the court's jurisdiction is made to depend upon the further question as to whether the court correctly or incorrectly adjudged the matter brought before it, or as to whether the result reached, when considered in respect of particular facts shown, was right or wrong.

When the proceeding, as here, is a special statutory one, and not in accordance with the course of the common law, the jurisdiction of the court, though a court of general jurisdiction, must affirmatively appear upon the record, and no presumption will be indulged in support of its decree or judgment when such jurisdiction does not thus affirmatively appear. If the jurisdiction of the court is thus made to appear, then the judgment rendered, though erroneous, would be a shield to ward off any claim which an heir or his assigns or representatives might assert to the property in the hands of the plaintiff. But suppose a person who is an heir, and entitled to a distributive share, but who had not joined in the petition for distribution, asserts a claim to his distributive share of the property in the hands of the plaintiff, would the decree or judgment rendered by the court distributing all the property to others, without notice of any kind, be a shield in the hands of the plaintiff against such a claim? If it would, then why would not a judgment of settlement and distribution of an estate also be a shield to a creditor's claim asserted against the property in the hands of a distributee or his assigns where the settlement and distribution were had without publishing or giving notice to creditors? I do not think it would in either instance. If in a case a settlement and distribution were had without notice to creditors, and the title of a distributee was questioned or assailed for the want of such a notice, it could as well be asserted that to make the assault successful it must

be averred and shown that there were creditors, as here to assert that the plaintiff was required to aver and show that there were heirs entitled to a distributive share who had not joined in the petition for distribution waiving notice.

But, aside from these considerations, the title depending upon a decree of distribution rendered on proceedings without notice was, I think, sufficiently doubtful and uncertain as to expose the plaintiff to the hazards of litigation, and thereby render the title not marketable, until the court of last resort, in a proper proceeding before it, has finally determined and adjudicated that a court in probate proceedings has jurisdiction to render a decree of distribution without notice. Suppose this court, in this proceeding between the plaintiff and the defendant, should now adjudge the title good and marketable, of what avail is the adjudication in the hands of the plaintiff in a case where an heir entitled to a distributive share, and who had not joined in the petition for distribution waiving notice, asserted a claim against the property in the hands of the plaintiff?

I think, from the terms of the written agreement entered into between the plaintiff and the defendant, it may be fairly presumed that the parties themselves thought that sufficient doubt and uncertainty existed with respect to the title by reason of the distribution without notice as to require some action or proceeding to clear up the title, and that such doubt and uncertainty led to the making of the agreement, by the terms of which the defendant agreed to take such steps or to pay the plaintiff the sum of one hundred and fifty dollars for such purpose. The defendant, upon demand, refused to do either; and, when he so refused, I think a breach of his contract occurred.

I therefore think that upon the issues, and upon the agreed statement of facts, the plaintiff was entitled to recover, and that the court erred in rendering judgment in favor of the defendant, and in dismissing the complaint.