## MOHR v. MANIERRE.

The statute of Wisconsin which provides for the sale of the real estate of a lunatic to pay his debts when his personal property is insufficient therefor, enacts that the order of the county court to show cause why the application of the guardian for a license to sell such real estate shall not be granted " shall be published at least four successive weeks in such newspaper as the court shall order, and a copy thereof shall be served personally on all persons interested in the estate and residing in the county in which such application is made, at least fourteen days before the day therein appointed for showing cause: *provided however*, if all persons interested in the estate shall signify in writing their assent to such . . . sale the notice may be dispensed with." It also enacts that the court " upon proof of the due service or publication of a

copy of the order, or upon filing the consent in writing to such sale, of all persons interested, shall proceed to the hearing of such petition, and if such consent be not filed, shall hear and examine the allegations and proofs of the petitioner and of all persons interested in the estate who shall think proper to oppose the application." A. was duly declared to be a lunatic and his lands in that State were on the petition of his guardian sold by order of the proper court. The sale was reported to the court and confirmed, and a deed made to the purchaser, against whom after the proceedings in lunacy were suspended, A. brought ejectment. He insisted that the court had no jurisdiction to make the order granting license to the guardian to sell, inasmuch as notice of the time and place of hearing the petition had not been published for the full period of four successive weeks. *Held*, 1. That the publication of notice of the hearing is only intended for the protection of parties having adversary interests in the property, and is not essential to the jurisdiction of the court. 2. That so far as the rights of the lunatic are concerned the jurisdiction of the court attached upon filing of the guardian's petition setting forth the facts required by the statute. 3. That as against the lunatic a license to sell is not rendered invalid by reason of an insufficient publication of notice of the hearing. 4. The rulings in *Grignon's Lessee* v. *Astor* (2 How. 319), and *Comstock* v. *Crawford* (3 Wall. 396), cited on this latter point.

ERROR to the Circuit Court of the United States, for the Eastern District of Wisconsin.

The facts are stated in the opinion of the court.

*Mr. F. W. Cotzhausen* and *Mr. James G. Jenkins* for the plaintiffs in error.

*Mr. S. U. Pinney, contra.*

MR. JUSTICE FIELD delivered the opinion of the court.

This was an action for the possession of certain land in the county of Walworth, in the State of Wisconsin. It was commenced in one of the State courts, and on the application of the plaintiff was removed to the Circuit Court of the United States. It was there tried by the court, without the intervention of a jury, upon stipulation of the parties. The court was held by the circuit and district judges, and, as they were opposed in opinion, the case is brought here upon a certificate of the points upon which they differed.

The facts out of which this division arose are briefly these: The plaintiff Mohr, previously to the sale under which the defendant claims, was the owner of the premises in controversy. In 1869, he was, by legal proceedings in the county court of Walworth, adjudged to be a lunatic incapable of taking care of

himself and managing his property, and a guardian was appointed over him. In October, 1870, the guardian applied, by petition to the court, for license to sell the real estate of his ward for the purpose of paying his debts. The petition alleged that the goods, chattels, rights, and credits of the lunatic in the hands of the guardian were insufficient to pay such debts and the charges of managing his estate. It set forth the amount of the debts and charges, the extent to which they exceeded the personal estate of the lunatic, and his opinion as to the necessity of using the whole or the greater part of the estate to pay the indebtedness, accompanied by a certificate of the supervisors of the town to the same effect; and it gave a description of the real property. Upon being filed, an order was made by the court requiring the next of kin of the lunatic, and all persons interested in his estate, to appear before the court on a day named, and show cause why a license should not be granted for the sale of the estate as prayed; and that notice be given by publication in a newspaper for four successive weeks prior to the day of hearing, and also by service upon certain persons named.

On the day appointed, Jan. 2d, 1871, there being no appearance adverse to the application, and no objection interposed, the court made an order granting a license to the guardian to sell the lands. The order recited that pursuant to the order made on the 21st of November, 1870, the petition was heard and considered; that the affidavits of two persons, who were named, were filed, showing that the notice required had been duly published; that it appeared after full examination, that it was necessary, in order to pay the debts of the lunatic, that all his real estate should be sold; and that the supervisors of the town had certified to the judge of the court their approbation of the proposed sale, and that they deemed it necessary. The order required the guardian, before the sale, to execute to the judge a bond in the sum of $15,000, conditioned that he would sell the property, and account for and dispose of the proceeds in the manner provided by law; also that he would take the oath required by statute; give notice of the terms and place of the sale, with a proper description of the property, by posting in three public places in the town where the property was

situated, and by publication for three weeks in a weekly news-
paper. It contained other directions not material to be men-
tioned, which were designed to secure a fair sale and a just
price for the property; and it required the guardian to report
his proceedings to the court. Under this license a sale was
made, and a deed executed to the purchaser, and a report thereof
made to the court, which was confirmed. The defendant claims
under the purchase at this sale.

Subsequently the proceedings and commission in lunacy were
superseded, and the plaintiff Mohr brought the present action
to recover possession of the premises. After it was commenced
a party to whom he had transferred an undivided interest was
joined with him as co-plaintiff.

The case turns upon the validity of the sale in question.
The order of the county court of Wisconsin, in granting the
guardian license to sell the property, was assailed as having
been made before notice of the time and place of hearing the
petition of the guardian had been published for four successive
weeks, as required by the court and the statute of the State.
It is insisted that such notice was in the nature of process to
bring the parties before the court, and its constructive service
by publication for the period mentioned was essential to give
the court jurisdiction. The order recited, as already stated,
that by the affidavit of two persons named, the required publi-
cation was shown to have been made; but the judges certify
that it appeared from one of the affidavits that the notice was
not thus published. It is to be regretted that the two affidavits
are not embodied in the record. We might differ from the
judges in the conclusion reached by them. We might, perhaps,
find that a publication was made once a week in four successive
weeks, and hold that this was a sufficient compliance with
the statute. Between the 21st of November, 1870, when
the order for publication was made, and the 2d of January,
1871, when the petition was heard, more than four weeks had
elapsed.

We shall assume, however, that the notice was not published
for the full period prescribed, and the question for consideration
is whether such omission, all other requisites of the statute
having been complied with, rendered the order of the court

invalid *as against the plaintiff Mohr*,* the then lunatic; or, in other words, whether such publication was essential to the jurisdiction of the court to grant the license to sell. The Supreme Court of the State, in a case brought by this plaintiff, — *Mohr* v. *Tulip*, — which came before it in 1876, affecting a part of the premises sold at the same guardian's sale, upon substantially the same proofs here presented, held that the sale was invalid for want of sufficient publication of such notice. On the other hand, the Supreme Court of the United States, in considering the validity of a sale of a decedent's estate under a statute in force in what was then the Territory of Wisconsin, requiring the county court, before passing upon the application for a license to sell, to order notice of its hearing to be given to all parties interested who did not signify their assent to the sale, had held, as far back as 1844, after deliberate consideration, that the absence of such notice from the record, or the fact that no such notice was given, did not affect the jurisdiction of the court, but was merely a matter of error, to be corrected by an appellate tribunal; and this decision has been repeatedly recognized as correctly marking the distinction between matters of error and matters of jurisdiction in proceedings for the sale of such estates. *Grignon's Lessee* v. *Astor*, 2 How. 319.

Under these circumstances the circuit and the district judge differed in opinion upon the following questions: —

1st, Whether the county court had jurisdiction to make the order granting the license to sell; or whether the order was invalid by reason of the alleged defect in the publication of notice; and —

2d, Whether, in view of the decision of the Supreme Court of the United States and the decision of the State Supreme Court in *Mohr* v. *Tulip*, the circuit court should follow the latter decision and hold the sale invalid.

The framers of the Constitution, in establishing the Federal judiciary, assumed that it would be governed in the administration of justice by those settled principles then in force in the several States, and prevailing in the jurisprudence of the country from which our institutions were principally derived. Among

* The record says as against the defendant, which is the same thing, for no one disputes his title but the plaintiff.

them none were more important than those determining the manner in which the jurisdiction of the courts could be acquired. This necessarily depended upon the nature of the subject upon which the judicial power was called to act. If it was invoked against the person, to enforce a liability, the personal citation of the defendant or his voluntary appearance was required. If it was called into exercise with reference to real property by proceedings *in rem*, or of that nature, a different mode of procedure was usually necessary, such as a seizure of the property, with notice, by publication or otherwise, to parties having interests which might be affected. The rules governing this matter in these and other cases were a part of the general law of the land, established in our jurisprudence for the protection of rights of persons and property against oppression and spoliation. And when the courts of the United States were invested with jurisdiction over controversies between citizens of different States, it was expected that these rules would be applied for the security and protection of the non-resident citizen. The constitutional provision owed its existence to the impression that State prejudices and attachments might sometimes affect injuriously the regular administration of justice in the State courts. And the law of Congress which was passed to give effect to the provision, made it optional with the non-resident citizen to require a suit against him, when commenced in a State court, to be transferred to a Federal court. This power of removal would be of little value, and the constitutional provision would be practically defeated, if the ordinary rules established by the general law for acquiring jurisdiction in such cases could be thwarted by State legislation or the decision of the local courts. In some instances the States have provided for personal judgments against non-residents without personal citation, upon a mere constructive service of process by publication; but the Federal courts have not hesitated to hold such judgments invalid. *Pennoyer* v. *Neff*, 96 U. S. 744. So, on the other hand, if the local courts should hold that certain conditions must be performed before jurisdiction is obtained, and thus defeat rights of non-resident citizens acquired when a different ruling prevailed, the Federal courts would be delinquent in duty if they followed the later decision.

If these views be applied to the present case there will be little difficulty in answering the questions which appear to have embarrassed the judges below. The statute of Wisconsin provides for the sale of the real estate of a lunatic to pay his debts when his personal property is insufficient for that purpose, and points out the steps which his guardian must take to obtain a license to make the sale. It is admitted that these steps were taken for the sale in question, except that the order of the county court to show cause why the license to sell should not be granted, issued upon filing the petition, was not published for four successive weeks before the petition was heard and the license granted. The statute on this subject says, in its fourth section, that " every such order to show cause shall be published at least four successive weeks in such newspaper as the court shall order, and a copy thereof shall be served personally on all persons interested in the estate and residing in the county in which such application is made, at least fourteen days before the day therein appointed for showing cause ; *provided however, if all persons interested in the estate shall signify in writing their assent to such ——— sale* the notice may be dispensed with." And the sixth section provides that " the judge of the county court, at the time and place appointed in said order, or at such other time as the hearing shall be adjourned to, *upon proof of the due service or publication of a copy of the order, or upon filing the consent in writing to such sale, of all persons interested,* shall proceed to the hearing of such petition, and if such consent be not filed, shall hear and examine the allegations and proofs of the petitioner and of all persons interested in the estate who shall think proper to oppose the application."

It is apparent from these sections that the publication of notice of the hearing is only intended for the protection of parties having adversary interests in the property, and is not essential to the jurisdiction of the court. It may be dispensed with if the parties having such interests consent to the sale. The consent could not be signed by the lunatic, for he, by his condition, would be incapable of giving a consent, and yet upon the others' consent, the court could proceed to act without notice to him.

Nor, indeed, was there any reason why publication of notice should be made for other parties than those who held adversary interests. The lunatic could not be affected by such publication any more than by his consent. The application of the guardian to the county court was required by the law only as a check against any improvident action by him. There was nothing in the nature of the proceedings which required a notice of any kind, so far as the rights of the lunatic were concerned. The law would have been free from objection had it simply authorized, upon the consent of the court, a sale of the lunatic's property for the payment of his debts. The authority of the court in that case, as in this, would have existed to license the sale whenever it appeared that the personal estate of the lunatic was insufficient to pay his debts, and that a sale of his real property was necessary for that purpose.

There is no charge of fraud in the action of the guardian, nor is it suggested that the property sold did not bring a fair price. The simple question is whether, as against the lunatic, the license to sell was invalid for insufficient publication of notice of the hearing, the same being, as already stated, required only for the protection of other parties interested in the estate. The decision of this court in *Grignon's Lessee v. Astor*, to which we have alreáḍy referred, would seem to be decisive on this point. Indeed, it goes beyond what is required for the affirmance of the judgment here. That was a case of an administrator's sale under a statute in force in the Territory of Wisconsin, which provided that the county court, previous to passing upon the presentation made by the petition of an executor, administrator, or guardian for license to sell the property in his hands belonging to the deceased or his ward, should order due notice to be given to all parties concerned or their guardians, who did not signify their assent to the sale, to show cause at such time and place as should be appointed why the license should not be granted. But in the order granting the license, it did not appear that notice had been given as thus required, and various other omissions were mentioned as impairing its validity. This court, however, held that no other requisites to the jurisdiction of the county court were prescribed by the statute than the death of the intestate, the insufficiency

of his personal estate to pay his debts, and a representation of these facts to the county court where he dwelt or his real estate was situated; that the decision of the county court upon the facts was the exercise of the jurisdiction which the representation conferred; that any irregularities or errors in the decision were matters to be corrected by an appellate court; and that the decision could not be collaterally attacked by reason of them. The court observed, in substance, that it was not necessary that the record should disclose the contents of all the papers before the county court, or its action in preliminary matters; that it was sufficient to call its powers into exercise that the petition stated the facts upon the existence of which the law authorized the sale; that the granting of the license was an adjudication that such facts existed; and that a purchaser was not bound to look beyond the decree. The doctrine thus stated has ever since been adhered to by this court in like cases, and in 1865, in *Comstock* v. *Crawford*, which arose upon a similar statute in the same Territory, that decision was followed. 3 Wall. 396. Its maintenance was held to be essential to the security of numerous estates in Wisconsin, where it is said many defects are found in the records of the proceedings of the probate courts in the early period of her history. It was adopted for many years by her courts after she ceased to be a territory and became a State of the Union. It was well fitted for the repose of titles. Whether the reasoning of this court in other cases would not lead to some modification of its doctrine it is unnecessary to consider. As already intimated, there is no occasion to go to the full extent of the doctrine for the disposition of the present case. Here no parties claiming interests adverse to those of the lunatic are objecting to the license to sell, granted on his behalf and at his request through his guardian.

In *Mohr* v. *Tulip*, the Supreme Court of Wisconsin overlooked the distinction between the position of the lunatic, who was in fact the applicant through his representative, and that of parties having adversary interests in the property. He can no more object to the sale of his property for want of notice to them, if the provisions of law intended for his protection were followed, than a plaintiff in a personal action could object to a

sale upon his own judgment on the ground that the latter was prematurely entered. The object of notice or citation in all legal proceedings is to afford to parties having separate or adverse interests an opportunity to be heard. It is not required for the protection of the applicant or suitor.

The statute declared that upon the existence of certain facts the sale of the lunatic's estate might be made, and when these appeared in the petition of the guardian, the court had jurisdiction to act, so far as his rights were concerned, as fully so as if the statute had so declared in terms, whatever may be the effect of its proceedings upon the interests of parties not properly brought before the court. We see no reason, therefore, so far as his interests are affected, to depart from the doctrine of *Grignon's Lessee* v. *Astor*.

*Judgment affirmed.*