DANIEL MITCHELL, Conservator, *vs.* PEOPLES SAVINGS BANK.

PROVIDENCE—APRIL 30, 1898.

PRESENT: Matteson, C. J., Stiness, Tillinghast, Wilbur, Rogers, Douglas and Bosworth, JJ.

The general powers in relation to guardians and wards conferred upon Courts of Probate in this State have never been deemed chancery powers.

A general grant of jurisdiction to courts other than the Supreme Court is not unconstitutional because, as an incident to the exercise of that jurisdiction, questions determinable only in a court of equity may arise.

Gen. Laws of R. I. cap. 196, § 41, providing for the removal of the property of a

non-resident ward from this State to the State of the residence of herself and
of her guardian, does not violate any of the provisions of the constitution of
this State, and is not in conflict with § 1 of article XIV of the amendments to
the constitution of the United States.

While the authority of a guardian is strictly territorial, yet that authority may
be extended by legislation to States foreign to the State of appointment.

The legislature may empower the foreign guardian to bring suit here, with or
without any condition precedent to that right.

The finding of a Court of Probate, acting under the statute above mentioned, is
not determinative of any right excepting that of the foreign guardian to bring
suit; every defence that might be urged against a domestic guardian will be
available against the foreign guardian, and the rights of parties having adver-
sary interests are not affected thereby.

Such a finding is not, in the constitutional sense, the exercise of a chancery
power.

The statute authorizing this action by a Court of Probate provides a remedy by
which a foreign guardian may obtain possession of his ward's property in this
State; it does not operate to affect the title of the ward, and, therefore, it does
not operate to deprive her of her property without due process of law, and is
not in conflict with § 10, art. 1, Const. R. I., nor § 10, art. XIV, Const. U. S.

The statute does not require notice; and, as the proceeding is in behalf of the
ward, and as adversary interests are not affected thereby, notice is not essen-
tial to jurisdiction.

The title to the property being in the ward, suit should be in her name by her
conservator or guardian, in the absence of statutory authority to bring it in his
own name.

But if the suit be in the name of the guardian, the ward's name may be added
by way of amendment.

ASSUMPSIT by a foreign guardian of a non-resident ward
to obtain possession of the ward's property in this State.
Heard on the constitutionality of the statute authorizing the
initial proceedings and the institution of the suit.

BOSWORTH, J.   This case is brought by Daniel Mitchell, a
resident of the State of Connecticut, conservator of the per-
son and estate of Paulina Mitchell, also a resident of Con-
necticut, against the Peoples Savings Bank, of Providence,
in this State, to recover the amount of a deposit, made by the
said Paulina Mitchell previous to the appointment of the
plaintiff as her conservator.

The declaration sets forth that a deposit was made by
Paulina Mitchell with the defendant corporation, December
27, 1853; that at the time of said deposit said Paulina
Mitchell was, and ever since has been, a resident of Killingly

in the State of Connecticut; that on the sixteenth day of June, 1894, the plaintiff was duly and lawfully appointed conservator of the person and estate of said Paulina Mitchell, accepted said appointment and gave bond as such conservator; that the office and duties of a conservator under the laws of the State of Connecticut are the same as the office and duties of a guardian under the laws of this State; that on the twentieth day of July, 1897, the plaintiff, in his capacity as conservator, applied to the Municipal Court (which is the Court of Probate) of the city of Providence, for leave to demand, sue for and remove to the place of residence of himself and ward all moneys in the hands of the defendant corporation; that he produced the proof required by § 41, cap. 196 of the General Laws of this State; that the Municipal Court, upon consideration, then and there found that a removal of said property would not conflict with the terms of limitation attending the right by which said Paulina Mitchell owns the same; and that said Municipal Court thereupon ordered, adjudged, and decreed that the plaintiff in his said capacity might demand, sue for and remove to the place of residence of himself and ward all moneys in the hands of the defendant corporation standing in the name of said Paulina Mitchell.

To this declaration the defendant corporation demurs, assigning as causes of demurrer (1) that § 41, cap. 196 of the General Laws is unconstitutional, and (2) that the Municipal Court had no jurisdiction to make the adjudication and to take the action set out in the declaration.

The defendant corporation also files a plea setting forth that said Municipal Court, before making the adjudication respecting the removal of the property, did not give notice of any kind, to any person whomsoever, of the application of the plaintiff, nor appoint any guardian *ad litem* to represent said Paulina Mitchell.

To this plea the plaintiff demurs, assigning as a cause of demurrer that the laws of Rhode Island do not require the giving of any notice, nor the appointment of a guardian *ad litem* or any other person to represent said Paulina Mitchell.

The case was heard upon the defendant's demurrer to the plaintiff's declaration, and the plaintiff's demurrer to the defendant's plea.

It is urged by the defendant that cap. 196, § 41, Gen. Laws, R. I., violates § 2 of art. X, and § 10 of art. I of the constitution of the State, and § 1 of art. XIV of the constitution of the United States.

Section 41 of chapter 196 of the General Laws is as follows:—

"In all cases where any guardian and his ward may both be non-residents of this state and such ward may be entitled to property of any description in this state, such guardian, on producing satisfactory proof to the probate court of the proper town and county, by certificates duly authenticated according to the act of congress in such cases, that he has given bond and security in the state in which he and his ward reside in double the amount of the value of the property, as guardian, and it is found that a removal of the property will not conflict with the terms of limitation attending the right by which the ward owns the same, then any guardian may demand or sue for and remove any such property to the place of residence of himself and ward."

Section 2 of art. X of the constitution of Rhode Island provides that "chancery powers may be conferred upon the supreme court, but on no other court to any greater extent than is now provided by law."

Section 10 of art. I of the State constitution provides "that no person shall be deprived of life, liberty or property unless by a judgment of his peers or the law of the land."

Section 1 of art. XIV of the amendments to the constitution of the United States, provides that no State shall "deprive any person of life, liberty or property without due process of law."

The authority granted by Gen. Laws R. I. cap. 196, § 41, was conferred upon Courts of Probate February 9, 1865.

The claim of the defendant is that this section is unconstitutional: (1) Because it confers chancery powers upon Courts of Probate to a greater extent than was provided by law at

the time of the adoption of the constitution of 1842. (2) Because it operates to deprive said Paulina Mitchell of her property without due process of law.

. At the time of the adoption of the constitution there was no court in Rhode Island known as the Supreme Court. Chancery powers, to a limited extent, had been conferred upon the Supreme Judicial Court, but this court had no general chancery jurisdiction. Courts of Probate at this time had exercised jurisdiction since 1742 over persons of unsound mind, with power to appoint guardians, settle accounts, &c. Subsequently to 1742 and previous to the adoption of the constitution the jurisdiction of Courts of Probate was extended, and power was conferred upon such courts to appoint guardians over infants and persons who, for want of discretion in managing their estates, were liable to bring themselves to want; so that, at the time of the adoption of the constitution, jurisdiction generally, in matters relating to the appointment of guardians and affecting the relations of guardians and wards, was vested in Courts of Probate.

The jurisdiction exercised by the English courts of chancery, over guardians and wards, did not arise because the appointment of guardians and the management and settlement of the estate of the ward presented questions that necessarily called for an exercise of the power of equitable interpretation or the application of equitable remedies, but because it was necessary that those persons, unable properly to care for themselves, should be cared for by the sovereign authority; and, therefore, in the absence of jurisdiction specially conferred upon any tribunal, the court of chancery, representing the king in his quality of *parens patriæ*, extended and exercised its jurisdiction over guardians and wards.

In the United States the appointment of guardians and the management and settlement of the estates of persons under guardianship has never been peculiarly within the jurisdiction of chancery courts. By statutes in the different States, power to adjudicate in matters relating to guardians and wards, generally, has been conferred upon courts exercising probate jurisdiction. Wœrner's Am. Law of Guar-

dianship, pp. 79–432; *Hoyt* v. *Sprague*, 103 U. S. 613–631. In Rhode Island, long before the adoption of the constitution, the General Assembly had placed persons unable to care for themselves, together with their estates, in the care of Courts of Probate. The general powers thus conferred upon Courts of Probate were not, at the time of the adoption of the constitution, and never since have been, deemed to be chancery powers. It is true, that questions affecting the relations of guardians to the estates of their wards, which can only be determined by the Supreme Court exercising chancery powers, may not infrequently arise; but a general grant of jurisdiction to courts, other than the Supreme Court, is not unconstitutional because, as an incident to the exercise of that jurisdiction, questions determinable only in a court of equity may arise. It follows, therefore, that in all matters relating to guardian and ward which do not require the interposition of a court of equity, so far as power has been conferred upon Courts of Probate, such courts may exercise that power, although of greater extent than that exercised by such courts at the time of the adoption of the constitution. To give to § 2, article X of the State constitution the construction claimed for it by the defendant, is to determine that all amendments to the laws of the State since 1842, by which the jurisdiction of Courts of Probate in matters relating to guardian and ward has been extended, are unconstitutional. In the present case no question of construction arises. The defendant does not claim that the deposit in question is held subject to or attended by any terms of limitation. But assuming that a question of construction did arise, and, further, that such question, in its determination, involved a finding in accordance with the principles of equity, is § 41, so far as it confers upon Courts of Probate the power to make such finding, unconstitutional? We are of the opinion that it is not.

While the authority of a guardian is strictly territorial, yet that authority may be extended by legislation to States foreign to the State of appointment. Statutes similar to the statute under consideration, or providing a method by which

a foreign guardian is entitled to recognition, for certain pur-
poses, have been passed in most, if not all, of the States of
the Union.   They are enacted in a spirit of comity, to enable
the foreign guardian to obtain possession of the estate of his
ward, without entailing upon that estate the unnecessary
expense of a proceeding in equity, or of securing ancillary
appointment in the State where the property may be.   The
statute in question points out a method by which a foreign
guardian may be recognized in securing the rights of a non-
resident ward.   The legislature may impose any condition
precedent to the right of a foreign guardian to bring suit,
or it may permit the foreign guardian to bring suit without
imposing any condition precedent to that right.   The find-
ing of the Court of Probate, however, is not determinative of
any right except that of the foreign guardian to bring suit.
Every matter in defence that might be urged against a do-
mestic guardian may be urged against the foreign guardian.
The rights of parties having adversary interests are not
affected, and the finding of the Court of Probate that the
"removal of the property will not conflict with the terms of
limitation attending the right by which the ward owns the
same" is not conclusive upon any tribunal in which the for-
eign guardian may bring suit, and in which it may appear
that the terms of limitation attending the right by which
the ward owns the property sought to be recovered will not
permit a removal of said property from the State.   This view
is emphasized by the fact that the statute does not require
notice to be given by Courts of Probate previous to the adju-
dication or finding in question.   While notice in a matter of
the kind under consideration is not essential to jurisdiction,
yet notice would be necessary to those having adversary in-
terests, provided it was intended that the finding of the Court
of Probate was to affect those interests.   *Scarf* v. *Aldrich*,
32 Pac. R. 324; *Mohr* v. *Manzierre*, 101 U. S. 417; *Myers* v.
*McGavock*, 58 N. W. 522.   Evidently the intent of the stat-
ute is to provide a method by which a foreign guardian may
bring suit in this State, and we are of opinion that, further
than this, the adjudication or finding of the Court of Probate

has no effect.    It settles no issues, affects no equities, gives no relief.    We are of opinion that the power to make such a finding is not, in the constitutional sense, a chancery power.

The defendant further contends in this case, that the action of the Court of Probate deprives Paulina Mitchell of her property without due process of law, that is, without notice or opportunity to be heard, and, therefore, that the statute in question is unconstitutional.    We are of the opinion that the statute in question does not operate to deprive her of her property.    It simply enables the legally appointed guardian to obtain possession of her property in this State, and to remove it to her place of residence, where it may be protected by the laws of the State of her residence and used for her benefit.    The statute, instead of depriving her of her property, provides a remedy by which, through her guardian, she may obtain possession of it.    In its operation it goes no further than to change the custody of the property; it does not direct that it should be converted.    The title to the property is not changed.    This is not a violation of the constitutional provision.    That which the constitutional provision is intended to perpetuate is the substance of the individual right to property.    It is not intended to deprive the legislature of the right to devise new remedies.    The recovery by the foreign guardian of the deposit in question will not affect the title of the ward; her lack of capacity to have the control and custody of that deposit was settled by a judicial proceeding in Connecticut, to which full faith and credit must be given in Rhode Island.    Sec. 1, art. IV of the constitution of the United States.    We are of opinion that the section in question does not deprive said Paulina Mitchell of her property.

The defendant further claims that notice should have been given to said Paulina Mitchell, and that a guardian *ad litem* should have been appointed to represent her.    The statute does not require notice.    This is a proceeding in her behalf, and not adverse to her.    As already suggested, notice is not essential to jurisdiction; neither is it required to be given to those who do not have adversary interests.    See *Scarf* v. *Aldrich, Myers* v. *McGavock*, and *Mohr* v. *Manzierre*, above

cited; also *Mohr* v. *Porter et al.*, 51 Wis. 487; Cooley on Const. Lim. 98–106.

For the reasons above given we overrule the defendant's demurrer to the plaintiff's declaration, and sustain the plaintiff's demurrer to the defendant's plea.

The only remaining question is whether the suit should have been brought in the name of Paulina Mitchell or of Daniel Mitchell as her conservator. The form of action is not directed by the statute. The title to the property, however, is in said Paulina Mitchell; and, in the absence of statutory authority to the guardian or conservator to bring suit in his own name, we are of opinion that it should have been brought in her name, by her conservator. But this is at the most a formal irregularity; for the suit in either case would be for the benefit of the ward, and the addition of the name of said Paulina Mitchell as a party plaintiff would not be treated as a material amendment, as it would affect no substantial right. The action then, under the statute, would be commenced by the foreign guardian, in the same way and with the same effect as if brought by a domestic guardian. *Vincent* v. *Starks et al.*, 45 Wis. 458 (461–2).

Case remitted to the Common Pleas Division for further proceedings.

*Clarence A. Aldrich*, for plaintiff.

*James Tillinghast, William R. Tillinghast and Theodore F. Tillinghast*, for defendant.