SPADE v. MORTON *et al.*

No. 925.   Opinion Filed March 21, 1911.

(114 Pac. 724.)

1. GUARDIAN AND WARD—Proceedings. For Sale of Ward's Land—Necessity for Notice. There is no requirement of statute that notice shall be given by a guardian of his intended application under sections 3509-3511, Mansfield's Digest of Statutes of Arkansas (Ind. T. Ann. St. 1899, secs. 2405-2407) for an order of sale of his ward's real estate.

2. SAME. Failure to give such notice does not render the order of sale void on collateral attack.

3. GUARDIAN AND WARD—Sale of Ward's Realty—Validity of Private Sale. A private sale of the land of a minor by his guardian for investment under the provisions of sections 3509 and 3511, Mansf. Dig. (sections 2405, 2407, Ind. T. Ann. St. 1899), made under order of court and confirmed by the court, if irregular, is not void on collateral attack.

4. SAME—Confirmation. By section 3506, Mansfield's Digest of the Statutes of Arkansas (Ind. T. Ann. St. 1899, sec. 2402,) all sales of minors' land by a guardian are required to be reported by the guardian and confirmed by the court; and, in the absence of such report and confirmation, no title passes to the purchaser; but, where a guardian made application to the court, setting up the

facts showing that his ward's real estate should be sold for investment, and that one M. offered a stipulated amount for the property, which was the highest and best bid applicant had received for the property, and prayed for order of court directing him to sell and convey the property to M. for said amount, and the court granted the order as prayed for by the guardian, and directed the guardian to execute a deed to M., held, that such order constituted a confirmation of the sale, and, if irregular, such irregularity would not vitiate the sale on collateral attack.

5. CONSTITUTIONAL LAW—Self-Executing Provisions—Judges Pro Tempore. That portion of section 9, art. 7, of the Constitution, providing for the election of district judges pro tempore, is not self-executing.

(Syllabus by the Court.)

*Error from District Court, Cherokee County; Malcolm E. Rosser, Judge.*

Action by Sam Spade, a minor, by John Spade, guardian and next friend, against A. D. Morton, Jennie O. Morton, and the Prairie Oil and Gas Company. Judgment for defendants, and plaintiff brings error. Affirmed.

*M. C. Reville* and *Kenneth S. Murchison,* for plaintiff in error.

*W. S. Fitzpatrick, J. B. F. Cates, N. E. Van Tuyl, George S. Ramsey,* and *C. L. Thomas,* for defendants in error.

HAYES, J. This action was originally brought in the United States court for the Northern judicial district of the Indian Territory at Tahlequah. Upon the admission of the state, it was transferred, under the provisions of the enabling act and the Schedule to the Constitution, to the district court of Cherokee county, where trial was had and judgment rendered. The action was instituted in the court below by plaintiff in error, hereafter referred to as plaintiff, against defendants in error, hereafter referred to as defendants.

The purpose of the action is to set aside a certain deed executed by one Samuel Manus, as guardian of plaintiff, to defendant A. D. Morton, on a certain deed from defendant A. D. Morton and wife to defendant Prairie Oil & Gas Com-

Vol 28—25

pany, conveying 76.03 acres of land described in plaintiff's petition. By consent of the parties, the cause was referred to a referee to make findings of fact and to report same, together with the evidence heard by him. A motion of plaintiff to amend the referee's report was sustained in part and overruled in part. To the act of the court in overruling plaintiff's motion in part, exception was saved, and the same has been urged in this court by plaintiff, in that he insists that the evidence supports certain facts not found by the referee. In response to this contention, defendants contend that the record is not in such condition that the evidence may be reviewed or considered by this court. Waiving the contention of defendants as to the condition of the record, and without a decision thereon, we have carefully examined all the evidence in the record and find that the facts found by the referee, as modified by the amendments of the trial court, are supported by the evidence, and the same will not be disturbed.

The facts, as found by the referee and modified by the trial court except as shall be further stated herein, are substantially as follows: On the 22d day of June, 1904, one Samuel Manus was duly appointed and qualified as guardian of the person and estate of plaintiff, and continued as such guardian until his death, on September 29, 1906. The lands in controversy are located near the town of Ramona in this state, and are within what is now a tank farm of defendant Prairie Oil & Gas Company at that place. Plaintiff is a full blood Cherokee Indian, duly enrolled as such, and the lands in controversy constitute a part of his allotment as a member of the Cherokee Tribe of Indians, and he was at all times hereinbefore mentioned, and subsequent thereto up to and including the trial of the action in the court below, a minor. Defendant Morton was at said times a resident of the town of Ramona, and engaged in the buying and selling of real estate. On June 21, 1906, there was approved by the President an act of Congress which removed the restrictions of plaintiff upon his power to alienate his allotment. Act June 21, 1906, c. 3504, 34 Stat. 345. Before the passage of this act by Congress,

defendant Morton had discussed the question of selling the land to the Prairie Oil & Gas Company with some of its representatives, and had also made some investigation as to what the land could be bought for. He also went to Washington, and was instrumental in having the restrictions removed by the act of Congress, and he did so in expectation of being able to buy the land and resell it to his codefendant, but he had no contract or agreement with any one for such sale. On July 6, 1906, the guardian of plaintiff filed with the court his petition for order permitting and directing him to sell the lands in controversy to defendant Morton for a consideration of $1,330.52. On the 18th day of the same month, the court acted upon the petition and granted the order in conformity with the application of the guardian; and on the succeeding day plaintiff's guardian, Samuel Manus, executed his guardian's deed, conveying the lands to Morton. On the 23d day of the same month, Morton and his wife executed a warranty deed, conveying this land, with other lands, to defendant Prairie Oil & Gas Company.

The grounds upon which plaintiff seeks to have the deed set aside are succinctly stated by him in the propositions urged in his brief for reversal of the cause, which are as follows: First. That there was no notice given by the guardian of his intention to apply for authority to sell the lands of his ward. Second. That the decree of sale did not comply with the statute, in that it failed ·to· fix the time and place for such sale or to direct the guardian to cause notice to be put up 20 days before the date of the sale. Third. That the guardian's deed contains none of the recitals required by the statute to be made in a guardian's deed. Fourth. That the sale was never reported to the court or confirmed by it. Fifth. That the sale is void on account of fraud participated in by defendants and plaintiff's guardian, Samuel Manus. Sixth. That plaintiff's restrictions upon his power to alienate his lands have never been removed, and the court was without jurisdiction to order sale of same. Seventh. That the regular judge of the judicial district in which this cause was tried, who was dis-

qualified in the case, committed error in continuing the case, instead of ordering an election of a judge *pro tempore,* as prayed for by plaintiff.   Eighth. That the Honorable Malcolm E. Rosser, the regularly elected and qualified judge of the Fifth district, who had been· authorized and designated by the Chief Justice of the Supreme Court to hold a separate term of court in said district, was without authority to try this cause; and that plaintiff should have had an order directing a judge *pro tempore* to be elected to try same.

All the proceedings in probate pertaining to the land in controversy were had before the admission of the state, and were governed by the provisions of Mansfield's Digest of the Statutes of· Arkansas in force in the Indian Territory.   Section 3502 of that digest (Ind. T. Ann. St. 1899, § 2398) authorizes the probate court to order the sale of real estate of minors for the purpose of providing means for their education.   And section 3511 (section 2407) authorizes the probate court to sell the real estate of any ward for the purpose of investing the funds derived therefrom, when it will be for the benefit of the ward to do so.

Section 3503 (section 2399) reads as follows:

"When real estate of minors is ordered to be sold under the provisions of the last preceding section, such sale shall be advertised and conducted in the same manner as now provided by law for advertising and conducting sales of real estate of deceased persons, made by executors and administrators, for the payment of debts."

By the specific language of this section, its provisions are made to apply only to the sale of real estate .for the purposes authorized under section 3502, which is the education of the ward; and its provisions as to this class of sales do not require the proceeding for obtaining the order of sale to be governed by the provisions of the statute regulating the application for an order of sale by executors and administrators for the payment of debts. It requires only that, when the sale is ordered, it shall be advertised and conducted in the manner that sales are advertised and

conducted by administrators and executors for the payment of debts.   Section 159 (section 216), which requires that the executors and administrators applying for orders of sale shall give at least 20 days notice at the time of making such application by notice in some newspaper published in the county where the administration is pending, is not therefore made to apply to applications by guardians for order of sale.

Section 3510 (section 2406) provides that, when an order is desired by the guardian to sell the real estate of his ward for the purpose of reinvestment, such order may be obtained by presenting to the court a petition setting forth the conditions of the estate and the facts and circumstances upon which the petition is founded; and section 3511 reads as follows:

"If, after a full examination on the oath of creditable and disinterested witnesses, it appears to the court that it would be for the benefit of the ward that the real estate, or any part of it, should be sold or leased, the court may make an appropriate order for such sale or lease, under such regulations and conditions, subject to the provisions of this chapter in relation to the sale of real estate of minors, as the court shall consider suited to the case, first requiring the guardian or curator to enter into good and sufficient bonds to make such leases and conduct such sales with fidelity to the interest of his ward, and faithfully to account for the proceeds of such sales and leases according to law and as the order of the court may require."

Neither of these sections, nor any other section of the statute, contains any specific provision requiring notice of the application for such order to be given; and it cannot therefore be said that plaintiff's guardian in failing to give such notice has violated any specific provision of the statute; and it has been uniformly held by the Supreme Court of Arkansas that proceedings, both by administrators and guardians, for orders of sale of real estate is a proceeding *in rem*, and requires no notice of any kind or character, as a condition precedent to the jurisdiction of the court to hear and determine such application.   While in the case of sales by administrators such notice is specifically required by the statute, it has been uniformly held by that court that failure to give

notice in that kind of proceeding, as well as in a proceeding by a guardian, is only an irregularity which may be availed of on appeal, but does not render the order void, and cannot be set up as a ground of collateral attack.

In *Apel v. Kelsey*, 47 Ark. 413, 2 S. W. 102, where the administrator advertised the notice in a paper not authorized by the statute, speaking of the effect of this irregularity, the court said:

"Another objection was that notice of the intended application was given through the Gazette, of Little Rock, instead of a newspaper printed in Arkansas county. But the nonpublication of any notice at all would merely have been error, to be corrected on appeal, and would not have affected the jurisdiction of the court."

And speaking further of the same irregularity, as well as of the failure of the administrator to advertise the sale as the law required, the court said:

"They do not avoid the sale; the proceeding being *in rem* and the court having jurisdiction. Upon a collateral attack, the only inquiry commonly is, Had the court jurisdiction? For, if it had, the purchaser is not bound to look behind the order of the court, or inquire into its mistakes."

Other cases from the same state, supporting the foregoing doctrine, are: *Borden v. State*, 11 Ark. 519, 44 Am. Dec. 217; *Marr, Ex parte,* 12 Ark. 88; *Rogers et al. v. Wilson et al.*, 13 Ark. 507; *Bennett et al. v. Owen et al.*, 13 Ark. 177; *Montgomery et al. v. Johnson et al.*, 31 Ark. 74; *Beidler v. Friedell*, 44 Ark. 411; *Alexander v. Hardin*, 54 Ark. 480, 16 S. W. 264. In *Rogers et al. v. Wilson et al., supra*, the order of sale was made without notice of the intended application having been given, and it is said:

"And although it was clearly erroneous to have granted the order for the sale of the real estate, without first having given the notice required by the statute, the order was not void. * * *""

The same rule was adopted by the Supreme Court of the United States in the early case of *Grignon's Lessees v. Astor et al.*, 2 How. 319, 11 L. Ed. 283, and has been repeatedly followed by that court.

In *Thaw v. Falls et al.*, 136 U. S. 548, 10 Sup. Ct. 1044 (34

L. Ed. 531), where a similar question was under consideration, Mr. Justice Gray, delivering the opinion of the court, said:

"In this form of proceeding, the guardian sufficiently and fully represented the infants, and no notice to them was required by the statute of Maryland or by any general rule of law. The want of proof of such notice, or of any record of the evidence on which the orphans' court proceeded in making the order, or the chancery court in approving it, or of any subsequent accounting by the guardian for the proceeds of the sale, is immaterial. The orders of those courts within their jurisdiction were conclusive proof in favor of the purchaser and grantee at the sale, and cannot be collaterally impeached on any such ground."

See, also, *Mohr. v. Manierre,* 101 U. S. 417, 25 L. Ed. 1052, and *United States v. Morse et al.* (recently decided) 219 U. S. 493, 31 Sup. Ct. 37, 54 L. Ed. 1123.

The rule followed in *Mohr v. Manierre, supra,* was considered and approved by this court in *Eaves v. Mullen,* 25 Okla. 679, 107 Pac. 433, a case arising since statehood, under a statute requiring notice of the guardian's application for an order of sale and notice of the sale to be given. There are greater reasons why this rule should be sanctioned and followed in the instant case than in *Eaves v. Mullen,* for this cause arose under the statute adopted from Arkansas after it had been construed, and at a time when the rule of the federal Supreme Court was conclusive upon the courts of the Indian Territory.

For similar reasons, the objection that the order of sale did not fix the time and place for such sale, and direct the guardian to cause notice thereof to be posted, is without merit. In the application for the order, in addition to setting out facts showing that it would be beneficial to applicant's ward to sell the land in controversy and invest the funds derived therefrom, it is stated that defendant Morton desired to purchase the land for industrial purposes, and offered to purchase it for the sum of $1,332.52, and applicant prayed for an order directing the applicant to sell and convey said land to said Morton. The order of sale specifically directs that the guardian execute a deed to Morton, conveying the

land for the consideration named in the application, without any provision for time, place, or publication of notice of sale. All sales by executors and administrators for payment of debts are required, by section 174 of Mansfield's Digest (Ind. T. Ann. St. 1899, § 231), to be made at public sale to the highest bidder after notice of the time and place of said sale shall have been given in the manner prescribed. In *Apel v. Kelsey,* 52 Ark. 341, 12 S. W. 703, 20 Am. St. Rep. 183, the administrator had conveyed land upon a private sale, without publication of notice, and the court held, not, however, without criticism of the doctrine that had been established by the previous decisions of the same court, holding that the probate courts of Arkansas are courts of superior jurisdiction, and that their judgments in the exercise of that jurisdiction cannot be attacked collaterally, that the act of the administrator, selling at private sale instead of public sale, was only an irregularity, which, when confirmed by the court, was not void or subject to collateral attack. Whether the statute directs that all sales of a minor's real estate shall be at public sale, at a time and place fixed by the order after public notice thereof by the guardian, may be well doubted.

Section 3511, *supra,* authorizes the probate court, in ordering a sale of the ward's real estate for the purpose of investment, to direct such sale to be made "under such rules and regulations and conditions, subject to the provisions of this chapter in relation to sales of real estate of minors as the court shall consider suited to the case. * * * " The only provision of the chapter requiring the sale of real estate of minors to be advertised and conducted in the manner provided for conducting sales of real estate of deceased persons by administrators is section 3503; but that section by its terms does not apply to all sales by guardians, but only to sales for educational purposes. This is not true, however, of other provisions of the chapter. Section 3504 (section 2400) reads: "No real estate of any minor shall be sold for less than three-fourths of its value." And section 3505 (section 2401) provides: "No guardian or curator of any minor

shall directly or indirectly become the purchaser of such real estate." And section 3506 (section 2402) requires that, when any guardian shall sell any real estate belonging to his ward, he shall report the same to the court for confirmation. The last three sections referred to, by their general and comprehensive terms, apply to the sale of real estate of minors for all purposes; and it may well be argued that section 3511, authorizing the sale to be made under such regulations and conditions as the court may prescribe, intended that those regulations and conditions should be subject only to those provisions of the chapter which by their terms would apply to such sales, and did not intend thereby to make the special provisions of the chapter applying only to sales for certain purposes to apply to sales for all purposes. And there are reasons why the Legislature should have made such provisions for sale for reinvestment. A sale under section 3511 is not made for the purpose of converting the real estate into cash, but that by means of the sale, it may be converted into other property bearing greater profits or income. Often lands may be exchanged to a greater advantage for other property than they can be sold upon the market for a money consideration, and sometimes such exchange can be made when a sale for money could not be had at all; and it appears from the language of section 3511, construed in connection with the context, that a more liberal power was intended to be given to the courts in the matter of making orders for the sale of minors' lands, for the purpose of that section, than for other purposes. But, whether the foregoing suggestion as to the construction of this section is correct, it is not necessary here to decide, and we do not do so. Such question was properly before the probate court for its consideration in the first instance. It had jurisdiction of the matter, and the fact that it may have determined it erroneously under the rule hereinbefore announced would not vitiate the order of sale, but would only render it subject to be set aside on appeal or by other method of direct attack.

The guardian failed to recite in his deed certain facts directed

by the statute to be recited therein, such as advertisement, time, place, and terms of the sale. It is contended by plaintiff that this defect in the deed has the effect to put all purchasers from the guardian's grantee upon notice of all irregularity in the sale. Under our view of the effect of the irregularities in the sale, a consideration of this contention is unnecessary.

It is next contended that the sale was never reported by the guardian or confirmed by the court. It is the well-settled rule, under the statute involved, that a sale by a guardian is not complete until confirmed by the court, and, in the absence of confirmation, no title passes. *Guynn et al. v. McCauley et al.*, 32 Ark. 97; *Alexander v. Hardine,* 54 Ark. 480, 16 S. W. 264; *Lumpkins v. Johnson,* 61 Ark. 80, 32 S. W. 65; *Greer v. Anderson,* 62 Ark. 213, 35 S. W. 215. There was in this case no formal report of the sale and confirmation thereof after the original order; but the guardian and the court appear to have acted under the impression that the statute authorizes a private sale; and, when the guardian made his application for the original order, he did not ask to be permitted to offer generally the land for sale, or to receive offers to purchase; but he submitted to the court a specific proposition from the defendant Morton to buy the land at a stipulated price, and prayed the court to authorize and direct him to sell the land to said Morton at said price. The order of the court finds that defendant Morton has offered to purchase the land at a specified price, which the court finds to be an adequate and sufficient price for the land, and the highest and best bid received by the guardian, and directs the guardian, not to sell the land and report his action thereon to the court, but to execute to said Morton a deed of conveyance, conveying him the land for the consideration offered. This order in our opinion was intended by the court and all parties thereto to constitute the final consummation of the sale and a subsequent order by the court, expressing its sanction of the sale, could, for that purpose, add nothing to the force of the language of the original order. The order did not direct the guardian to offer for bids, but to convey the land by

the execution of a deed.  When the proposition of defendant Morton was presented to the court by the application, and the court accepted and approved the same, the contract was finally consummated.  If such method of consummating a sale was irregular, the irregularity could have been reviewed on appeal, but cannot be considered here.

The position occupied by the court in sales by guardians has been clearly defined by the decisions.  The court is the vendor, and what takes place before final approval is in the nature of a bid, which may be accepted or rejected.  *Apel v. Kelsey, supra.* The guardian acts as the agent of the court; he is without power to make the sale himself; and, while the offering of real estate for public bids by him is designated as a sale, legally speaking, it is not; for, while he rejects all bids, except the highest bid, he only receives that one to report it to the court; and the contract is not consummated upon that bid until the court accepts same when reported to it.  In the case at bar the bid was reported and was accepted by the court, and the deed was executed; and, however irregular the making of the order in this form may-be, the effect thereof in this proceeding cannot be, we think, subject to much doubt.

A somewhat similar question was considered in *Files v. Brown,* 124 Fed. 133, 59 C. C. A. 403, wherein the receiver of a national bank filed a petition in the Circuit Court for the Eastern district of Arkansas in which he prayed for an order of the court directing him to accept a bid of $25 for a certain judgment owned by the bank, and for an order directing him to make the sale and assign the judgment, which order was made by the court as prayed for.  The sale made thereunder was attacked upon the ground that it had never been confirmed.  In holding that the order of sale constituted a confirmation of the sale, the court, among other things, said:

"There is another reason why this sale was complete.  The reason of the old rule in chancery that sales made by a master under an order or decree of court are not final, unless confirmed,

is that the court is the vendor, and it cannot know what the offers or bids will be at a sale at auction; that the master is its agent to receive and report the bids, without authority to accept any of them. Hence it is not until the best bid has been reported to the court, and it has accepted it, and confirmed the sale by an order directing the master to complete it, that it becomes final. The reason of this rule ceases to be in a case like that at bar, where the bid is reported to the court in the first instance, and it accepts it and orders the master or receiver to take the price offered and to convey the property to the purchaser. And, where the reason of a rule no longer exists, the rule itself ceases to be. So that, even if the old chancery rule were in force, it would have no application to the sale in hand. The order to the receiver to sell and convey the property to a purchaser named, for a price fixed in the order is itself both an aceptance of the bid and a confirmation of the sale, so that when the order has been executed the court is as firmly bound in law and in morals as any private citizen by his executed sale. When a bid by a proposing purchaser is reported to the court by a receiver or master, and the court by its order authorizes the officer to accept payment of the price offered and to convey the property to the purchaser, and he does so, the sale is complete, no further order of confirmation is essential, and the court is as firmly bound in law and in morals as any private citizen would be by the executed sale."

It is further contended that there was a fraudulent conspiracy between defendants and plaintiff's guardian to have plaintiff's restrictions removed and defendants obtain his land for an inadequate consideration; that defendant Morton obtained from the guardian a deed to the land for the consideration named by paying to the guardian the sum of $100. Upon all these issues the referee has found against plaintiff, and his findings have been confirmed by the trial court. An examination of the record discloses sufficient evidence to sustain the findings. Before the land was sold, it was appraised by three disinterested appraisers, and its value placed at $10 per acre. The integrity of the appraisers and the correctness of their appraisement have not been questioned by plaintiff. The sum received by the guardian from defendant Morton for the land is approximately 80 per cent. greater than the appraised value of the land. The land was desired by the

defendant oil company for oil tank farm purposes, but could be used by it only in connection with other lands not owned by plaintiff. Morton, acquainted with the wants of the oil company, undertook to acquire the several tracts of land needed by the oil company, and plaintiff's land in connection with these other lands thereby became more valuable to Morton than it would be under other conditions and for other purposes; and able counsel for plaintiff did not contend at the oral argument that plaintiff had not received full value for the land.

The contention that the restrictions of plaintiff have not been removed is plainly without merit; the Indian appropriation act, approved June 21, 1906, contains the following provisions:

"That all restrictions as to the sale, incumbrance, or taxation of the lands heretofore allotted to William P. Ross, of Tahlequah, Maud W. Ross, * * * Sam Spade, * * * all citizens of the Cherokee Nation, Indian Territory, and duly enrolled as such, be, and the same are hereby removed." (Act June 21, 1906, c. 3504, 34 Stat. 344.)

It is not contended that the Same Spade named in the foregoing act refers to any other person than plaintiff. The language in the act is too definite, explicit, and unambiguous to admit of any doubt of its meaning and effect.

When the cause came on for hearing on the referee's report, the regular judge of the court in which the same was pending was disqualified. Plaintiff requested of the court an order for the election of a judge *pro tempore*, but the court refused his request and continued the cause. Subsequently the Honorable Malcolm E. Rosser, judge of the Fifth judicial district, was assigned by the Chief Justice of this court to hold a separate term of the district court in Cherokee county, beginning with the 20th day of July, 1908. During this term of court, the cause came on again for hearing upon the referee's report, and the request for an election of a judge *pro tempore* was renewed by plaintiff and overruled. Plaintiff based his right to such order upon section 9, art. 7, of the Constitution, which provides:

"In the event any judge shall be disqualified for any reason

from trying any case in his district, the parties to such case may agree upon a judge *pro tempore* to try the same, and if such parties cannot agree, at the request of either party a judge *pro tempore* may be elected by the members of the bar of the district, present at such term."

Both of the foregoing acts of the court complained of occurred before the passage of an act approved March 27, 1909 (article 6, c. 24, Snyder's Comp. Laws of Okla.), prescribing a procedure governing the conduct of elections held for the purposes of electing judges *pro tempore*.

In *Cowart v. State*, 4 Okla. Cr. 122, 111 Pac. 672, the Criminal Court of Appeals of this state held the foregoing provision of the Constitution authorizing the election of judges *pro tempore* not to be self-executing. Without repeating the reasoning of the court upon which it reached such conclusion, it will suffice to say, we think, that both the conclusion reached and the reason given in support thereof are sound.

Section 9, art. 7, *supra*, also provides that:

"In the case of the illness of the judge elected in any district, or if for any other cause he shall be unable to preside in the district in which he was elected, the Chief Justice may designate any district judge in the state to hold any term of court in said district in lieu of the judge elected to hold the courts of said district. Whenever the public business shall require it, the Chief Justice may appoint any district judge of the state to hold court in any district, and two or more district judges may sit in any district separately at the same time."

It was under the foregoing provision of the Constitution that Judge Rosser was assigned to hold a separate term of coure in Cherokee county at which the cause came on for trial; and, when the same was alled for trial, Judge Rosser was as much a judge of the court in which the cause was pending as the regularly elected judge, duly made such by order of the Chief Justice, acting under powers granted by the Constitution. No complaint was made that Judge Rosser was disqualified; and plaintiff has had a trial of his cause, so far as is disclosed by the record, by a fair and impartial judge of the court in which his cause was pending; and

this is all that the Constitution guarantees to him. He has no vested right to have a trial of his cause before any particular judge.

Finding no error in the record requiring a reversal of the cause, the judgment of the trial court is affirmed.

TURNER, C. J., and KANE and DUNN, JJ., concur; WILLIAMS, J., not participating.