# Holton, *et al. v.* Rogers.

*Ejectment.*

(Decided February 11, 1915.  67 South. 1004.)

1. *Infants; Sale of Realty Under Orders; Jurisdiction.*—Under sections 4411, 4412, Code 1907, a petition alleging that petitioner was guardian for her minor children; that they had an interest in real property consisting of an undivided two-thirds interest in 60 acres of land therein described, of about $200 in value; that such land could be sold for $10 per acre; that other land could be purchased in lieu thereof for $5 per acre, which land was just as productive,

[Holton, et al. v. Rogers.]

the difference in price being due to the distance from market, and that it would be greatly to the advantage of such minors if she were permitted to sell the land and re-invest the proceeds in the other land, was sufficient to confer jurisdiction upon the probate court to authorize a sale for re-investment, and such order was, therefore, not void, and could not be collaterally attacked in an action in ejectment.

2. *Judgment; Collateral Attack.*—Where the application contained facts necessary to confer jurisdiction on the probate court to order a sale of land of minors for re-investment, the decree or order of sale cannot be successfully assailed on collateral attack in an action in ejectment, although errors or irregularities intervened between the acquiring of jurisdiction, and the decree or order of sale.

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

Ejectment by R. D. Holton and another against J. M. Rogers. Judgment for defendant, and plaintiffs appeal. Affirmed.

Plaintiffs were the children of Jake Holton, who died intestate in October, 1900, residing in what was then Henry, but is now Houston, county, and at the time he resided upon and occupied the lands sued for as a homestead, which did not exceed in value $2,000, and his personal property did not exceed $1,000 in value. He left a widow, who afterwards married and became Lena Deal, mother of plaintiffs, and who afterwards was appointed guardian of said plaintiffs. Her petition to sell the land is as follows: (1) That she is the mother of Robert D. Holton and Mattie D. Holton, minors under the age of 14 years, who reside with petitioner in said state and county. Petitioner further represents that said minors (naming them) have an estate in their own right of about the value of $200, the same consisting of an undivided two-thirds interest in and to the 60 acres of land situated in this county. On this petition letters of guardianship were issued to said Lena Deal. Later after stating the facts as above and describing the real estate, it is alleged that petitioner is the widow of said

J. M. Holton, and that her wards were the minor children of said Holton, deceased, and of petitioner; that said real estate descended to petitioner and her said wards, share and share alike, as the widow and minor children of said J. M. Holton, under the statute of exemptions, the said 60 acres of land being all of the real estate owned by the said Holton at the time of his death. Petitioner avers that at the present time she can sell said real estate at and for the sum of $10 per acre, and that she can purchase other lands in lieu thereof for the sum of $5 per acre, which said last-named lands are just as productive as the lands set out in this petition, the difference in the price of said land as compared with the above-named land being that the lands she desires to purchase are a little further from the market than the lands she desires to sell, and on which she and her wards reside. Petitioner avers that with the proceeds of the land of her said wards she can obtain twice as much land, which, as above stated, is as productive and fertile of soil as the lands they now own, and that it would be greatly to the advantage of her said wards, if it is permitted to her to sell said land and reinvest in other lands. Then followed the usual prayer for the appointment of a guardian ad litem, the taking of testimony, setting a day to hear the petition, and such other proceedings and orders as might be necessary. The petition was granted, and an order of sale entered, a report of the sale made, showing that J. M. Rogers became the purchaser of the two-thirds interest in and to the land, the report was confirmed, and the deed was executed to said J. M. Rogers.

ESPEY & FARMER, for appellant.

E. H. HILL, for appellee.

MAYFIELD, J.—Appellants sued appellee in eject-ment to recover possession of 60 acres of land. The trial court on the whole evidence directed a verdict for de-fendant, which resulted in a judgment for defendant, from which plaintiffs prosecute this appeal.

(1) There is but one material question involved on the appeal, to which question all others are subsidiary. That question is whether or not the proceedings in the probate court, by the guardian, to sell the lands in question, were void in such sense as to be so declared on collateral attack. The trial court ruled that the proceedings could not be declared void on collateral attack.

The reporter will set out the petition of the guardian for the sale of the land.

The statutes of this state confer jurisdiction on the probate courts to sell lands of their wards for several purposes, to pay debts, for maintenance, for reinvest-ment, and probably others. The sale in this instance was under section 4411 of the Code, for reinvestment. This section reads as follows: "The court of probate may authorize the guardian to sell any property of the ward, and direct the investment of the proceeds in bonds, notes, or bills of exchange at interest on mortgage secur-ity, or in other property or securities, in the name of the ward."

Section 4412 of the Code provides what the petition or application of the guardian shall contain, which is as follows: "To obtain such order of sale the guardian must make application in writing, verified by affidavit, describing the property sought to be sold, and stating the facts showing that the interest of the ward would be promoted by the proposed sale and reinvestment."

(2) We think it certain that the application in this case contained a statement of all of the facts necessary to confer jurisdiction on the court to proceed with the

sale. · This being true, errors or irregularities thereafter
intervening between the filing of the application or the
acquiring of jurisdiction, and the decree or order of sale
in accordance with the petition, cannot be successfully
assailed on a collateral attack like this action of eject-
ment to recover the lands.   If irregularities or errors
there be, they should be corrected on appeal or in some
direct attack upon the proceeding, and not by a collat-
eral attack.   This has too long been the law of this state
and is too firmly imbedded in our jurisprudence to be
now departed from.   It has too long been a rule of prop-
erty, and too many titles now depend upon it, to change
it.

A case very much like this and one that cannot be dis-
tinguished from it was that of *Daughtry v. Thweatt,* 105
Ala. 615, 16 South. 920, 53 Am. St. Rep. 146.   In that
case it was said:  "The proposition is that he could not
proceed to an order of sale without notice to the ward,
and without the appointment of a guardian ad litem to
represent her.   The proceeding the statute authorizes
has in it no element of an adversary suit in personam.
All such proceedings under analogous statutes authoriz-
ing the court of probate, or the judge of the court of
probate, to license or confer power on executors, or ad-
ministrators, to make sales of lands, or of personal prop-
erty, since the case of *Wyman v. Campbell,* 6 Port. 219
[31 Am. Dec. 677], have been regarded as proceedings
in rem and jurisdiction of the thing, and not of the per-
son, as imparting validity to the proceeding when col-
laterally assailed.—1 Brick. Dig., 939, §§ 351, 352.   The
jurisdiction of the judge of probate must have attached,
or there could not have been notice to, or the appoint-
ment of, a guardian ad litem for the ward.   The one or
the other would have been but movements, in the exer-
cise of the jurisdiction, attaching on the filing of the

application for the sale. The notice and appointment of the guardian ad litem would have been vain and nugatory if the application had not shown good cause for the sale. Without the application there would not have been jurisdiction of the subject-matter, and jurisdiction of the person, however plenary, could not have rendered the order of sale valid."

"We must not be understood as assenting to the proposition that notice to the ward, or the appointment of a guardian ad litem for her, was essential to the regularity of the proceeding. The statute makes no such requirement, and for the obvious reason, as we have said, that an adversary proceeding in personam is not contemplated. The application for the sale made by the guardian in her representative capacity, not in any individual right, would seem to be but the application of the ward, speaking and acting through her legal representative. Notice to the ward could only inform her of the pendency of her own proceeding, and warn her of a decree or order sought to meet her necessities or interests.—*Mohr v. Manderre,* 101 U. S. 417 [25 L. Ed. 1052]. A guardian ad litem could have no duty or office to perform which the law had not devolved on the general guardian. Whenever a guardian ad litem is deemed necessary for the representation of the ward in the court of probate, the statutes provide expressly for his appointment. In the proceeding for the sale of lands under the statute to which we have referred, there is no authority for, or the requirement of, such an appointment. This question the necessities of the case do not require us to decide, and we prefer to rest our conclusions on the settled doctrine, which has so long prevailed in this state, touching the character and validity of sales made under the orders or decrees of the court of probate."

It is true that it is insisted in this case that the averments of the petition, or application as the statute calls it, were not sufficient to call into exercise the jurisdiction of the probate judge or court, or necessitate or authorize the proceedings which culminated in the sale. In this contention, however, we cannot agree with counsel for appellant. As before stated, we are of the opinion that the averments were sufficient. It was not necessary to aver in terms or in so many words that the lands to be purchased were more valuable than the ones to be sold. The averments to this end were sufficient, and we must presume that the court would not have ordered the sale and a reinvestment, unless "the interest of the ward be promoted by the sale and reinvestment." This is what the statute requires.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.